**HARTFORD ACCIDENT & INDEMNITY COMPANY, Plaintiff-Appellee, Cross-Appellant,**

v.

**OCEANCARRIER SHIPHOLDING OF BELGIUM N.V. and ABC Container Lines N.V., Defendants-Appellants, Cross-Appellees.**

No. 85–3574.

United States Court of Appeals, Fifth Circuit.

Sept. 22, 1986.

Robert H. Murphy, Chaffe, McCall, Phillips, Toler & Sarpy, Daniel L. Daboval, Kenneth J. Servay, New Orleans, La., for defendants-appellants, cross-appellees.

James C. Cockfield, Metairie, La., plaintiff-appellee, cross-appellant.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before CLARK, Chief Judge, RUBIN and GARZA, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A longshoreman employed by a stevedore suffered personal injury while loading cargo aboard a vessel and was paid worker's compensation. The insurer of the stevedore seeks to recover the amount it paid the longshoreman from the vessel as a third party tortfeasor. The district court held that the negligence of the vessel's crew, together with the negligence of the stevedore, caused the injury, and therefore the loss to the stevedore. We affirm the district court judgment allowing recovery in reliance on *Federal Marine Terminals, Inc. v. Burnside Shipping Company*,[1] and apportioning the damages on the basis of comparative fault. Because the action is for a maritime tort to the stevedore rather than for recovery by assignment of, or a lien on, the rights of the longshoreman, *Burnside*, not the Longshoremen's and Harbor Workers' Compensation Act,[2] controls the decision.

## I.

James Perry, a longshoreman employed by InterOcean Stevedoring, Inc., was loading cargo containers aboard the M/V BRUSSEL at the Port of New Orleans. He was directed in his work by Melvin Leaber, the InterOcean foreman, and Leaber's superior, Adil Mistry, the InterOcean superintendent, but not by any member of the ship's crew.

Perry's work gang went aboard the M/V BRUSSEL at 6:00 p.m. on January 25, 1985. After the gang had loaded containers into the lower hold of the vessel's No. 6 hatch, Mistry asked one of the vessel's officers to close the hatch cover so that additional containers might be loaded on top of the cover. The hatch covers on the M/V BRUSSEL were closed by aligning the two halves of the cover and then lower-

---

1. 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969).

2. 33 U.S.C. §§ 901–950 (1982 & Supp. II 1984).

ing them into a position that creates a watertight seal. While the cover of No. 6 hatch was being closed, the ship's master, Captain Jean Stockart, Mistry, and several longshoremen were standing nearby on the cover to No. 7 hatch.

What happened next is disputed. Accepting the version of Perry and Burnell Scott, another longshoreman, the district court magistrate found that Leaber had told the gang to resume working. Consequently, Perry and Scott assumed that the cover was fully closed and they could safely continue loading. Scott went to the cover of hatch No. 6 and began preparation for loading the containers atop the cover by positioning the hatch pins required for that purpose. In fact, however, the cover was not fully closed, but was open a small distance to allow the crew to check the alignment so that the closure would be watertight. Just before the hatch cover was lowered into the watertight position, Scott asked Perry to hand him a mallet to position the pins. Perry, who had stepped or jumped from the cover of hatch No. 7 to the deck on the port side of hatch No. 6, could not locate a mallet but jumped onto the coaming (the frame of the hatch opening) on the port side of hatch No. 6 and began to use a pin to hammer in the hatch pins.

Perry would not have been in danger had be been on the hatch cover, as Scott was. Because he was standing on the coaming, however, with his toes projecting over the hatch opening, the hatch cover closed on his foot causing him serious injury. Perry could not work for twenty-four weeks and suffered a partial, permanent disability of his feet. He was paid $19,912.84 in compensation benefits by his employer's insurer, who seeks in this action to recoup the payments from the vessel and its owner.

The magistrate, to whom the case was tried by consent of the parties, found that the vessel's crew knew or should have known that Scott had returned to work and

therefore it was apparent that a longshoreman was in danger of having the hatch close on some part of his body. The magistrate specifically found Perry and Scott "very credible." He found that both of them believed that the hatch cover was closed when they started to work and that this belief was "not unreasonable under the circumstances." He held that the crew members had a duty to cease closing the hatch or to warn longshoremen to stay off the coaming until the hatch was completely closed. He also found Leaber to have been negligent in ordering Perry and Scott to return to work before he ascertained whether it would be hazardous for them to do so. He fixed the stevedore's negligence at twenty-five percent and awarded judgment against the vessel's owner for seventy-five percent of the compensation paid Perry.

None of the specific findings of historical fact that we have recited is attacked as clearly erroneous, and we, therefore, predicate our review on their correctness.[3] The vessel owner disputes the lower court's conclusions that the crew of the vessel was negligent, Perry was not, and the stevedore was only twenty-five percent at fault. The insurer contends that the stevedore's negligence cannot offset the vessel's liability.

## II.

■ A compensation insurer who has paid benefits to an injured worker may seek recovery from a shipowner whose negligence allegedly caused the injury on the basis that the vessel was negligent toward either the longshoreman-employee or the stevedore-employer. Section 933(b) of the LHWCA permits the insurer to assert the longshoreman's § 905(b) right to proceed against the shipowner. If the longshoreman himself proceeds against the owner, his employer's insurer has a lien on the longshoreman's recovery.[4] The insurer

3. *See* Fed.R.Civ.P. 52(a).

4. *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 269–70, 99 S.Ct. 2753, 2761, 61 L.Ed.2d 521 (1979); *Albert v. Paulo*, 552 F.2d 1139, 1140 (5th Cir.1977).

may however, proceed on an entirely different basis, asserting the stevedore's right of direct action against the shipowner on the basis of contractual subrogation to that right, as the Supreme Court held in *Federal Marine Terminals v. Burnside.*[5]

■ In this case, the insurer could not assert the longshoreman's rights against the shipowner. Section 933(b) provides that an employee's acceptance of compensation "under an award in a compensation order ... operate[s] as an assignment to the employer" of the worker's right to recover damages from a third person "unless [the worker] ... commence[s] an action against [the] third person within six months after [the] award." If the employer does not bring an action against the third person within ninety days, "the right to bring such action shall revert to the person entitled to compensation."[6] These provisions are predicated upon the entry of an award in a compensation order filed by the deputy commissioner, but, if no formal award is entered, the assignment provisions of the Act do not apply even if the employer has voluntarily made compensation payments.[7] As the magistrate noted, no "formal order" requiring that compensation benefits be paid was ever entered, nor was such an order requested either by the employer-stevedore or by the compensation carrier under 20 C.F.R. § 702.315 (1986). Therefore, no § 933(b) assignment of the longshoreman's 905(b) claim to the stevedore-employer was accomplished. Because Perry had not sued the shipowner, there was no recovery on which the insurer could establish a lien either.

■ In the absence of either an assignment of the employee's rights or a recovery on which a lien might be imposed, the insurer's claim could be asserted only by

derivation from the stevedore's *Burnside* right of direct action against the shipowner. In *Burnside,* the Court held that federal maritime law imposes on the shipowner a duty to the stevedoring contractor of due care under the circumstances. If the shipowner is negligent, the stevedore has an action in tort directly against the owner to recover the amount of compensation payments occasioned by that negligence. The insurer acquires this right of action through contractual subrogation.

■ On occasion, the distinction between the employer's direct and derivative actions has not been carefully drawn.[8] The difference, however, is material: the *Burnside* "direct action" is predicated on a breach of duty owed to the stevedore, not to the longshoreman, while the § 933 action is predicated on breach of duty only to the longshoreman, although it may be difficult to distinguish as a practical matter between the duty owed the longshoreman and the duty owed the stevedore. In the direct action, the negligence comparison is between the fault of the vessel and the fault of both the stevedore and the longshoreman, whose negligence is attributed to his employer, while in the § 933 "derivative" action, the comparison is between the fault of the vessel and that of the longshoreman alone, without considering the comparative fault attributable to the stevedore that does not stem from the injured longshoreman himself. In the *Burnside* action, the shipowner must reimburse only for the compensation payments that resulted from his negligence,[9] and not those that resulted from the negligence of the stevedore or the longshoreman. In a § 933 action, however, the shipowner may not assert the stevedore's negligence as a defense no matter how slight his own negli-

---

5. 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969).

6. 33 U.S.C. § 933(b) (Supp. II 1984).

7. *See Pallas Shipping Agency, Ltd. v. Duris,* 461 U.S. 529, 534–37, 103 S.Ct. 1991, 1994–95, 76 L.Ed.2d 120 (1983); *Peters v. North River Ins. Co.,* 764 F.2d 306, 311 (5th Cir.1985).

8. *See, e.g., Pallas,* 461 U.S. at 538–39, 103 S.Ct. at 1996 (suggesting that a *Burnside* action serves the purpose of a § 933(b) action).

9. *See Burnside,* 394 U.S. at 417, 89 S.Ct. at 1151–52.

gence.[10]  Consequently, in some circumstances, the stevedore may be able to elect between two remedies that produce different results.  Because this insurer brought a *Burnside* action, the shipowner was entitled to offset his liability by the fault of either the stevedore or, had Perry been negligent, the longshoreman.

### III.

In the *Burnside* action, the relevant duty of care by the shipowner is that owed the stevedore-employer.  Nonetheless, the magistrate did not distinguish between the owner's duty to Perry and its duty to his stevedore.  Instead, the magistrate appears to have drawn the inference that breach of the owner's duty to the longshoreman, Perry, was also a breach of the duty to his employer, the stevedore.  If there had been no breach of duty to the injured employee, there would have been no negligence with respect to his employer, so we next consider the duty due by the vessel to the longshoreman.

Section 905(b) of the Act permits a longshoreman to recover from a vessel for personal injury "caused by the negligence of [the] vessel." [11]  The standards for determining when such negligence has occurred were set forth by the Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos,*[12] and explained further by us in *Helaire v. Mobil Oil Co.*[13]

Although the *Scindia* Court acknowledged limitations on the shipowner's duty when cargo operations are assigned exclusively to the stevedore,[14] it reiterated the "accepted" rule that ships have a duty to "avoid exposing longshoremen to harm from ... equipment, under the active control of the vessel during the stevedoring operation," [15]  In *Helaire,* explaining what we though to be the principles set forth in *Scindia,* we announced three "circumstances where the [ship]owner cannot escape liability by reliance upon the stevedore." [16]  The second of these is: "the owner has a duty to avoid exposing the longshoremen to harm 'from hazards under the act or control of the vessel.'" [17]  *Helaire* also said that, "[o]nce loading operations have begun, the vessel owner can be held liable for injuries to employees of the stevedore resulting from open and obvious dangers only in the event of actual knowledge of the danger *and* actual knowledge that he cannot rely on the stevedore to remedy the situation." [18]  Based on the statement last quoted, and the lack of evidence that any member of the crew actually knew Perry was in a position of danger, the owner contends that it is not liable to the stevedore for Perry's injury.  It is patent, however, that the *Scindia* statement requiring actual knowledge of hazard, refers to injuries that occur "within the confines of the cargo operations that are assigned to the stevedore."[19]

Like the Supreme Court opinion in *Scindia,* the *Helaire* opinion was directed to a claim that the vessel owner was responsible for a defect in the vessel or its appurtenances existing when the vessel was turned over to the stevedore.  Neither *Scindia* nor *Helaire* limits the negligence for which a vessel owner may be liable to a longshoreman when the ship's crew participates in the cargo operations.  Indeed *Helaire* states inferentially that the owner would be liable if it had "actively involved itself in the unloading process so deeply"

10.  *See* 33 U.S.C. §§ 905(b), 933(b) (1982 & supp. II 1984); *Edmonds,* 443 U.S. at 268–69, 99 S.Ct. at 2760–61; *Samuels v. Empresa Lineas Maritimas Argentinas,* 573 F.2d 884, 888–89 (5th Cir. 1978), *cert. denied,* 443 U.S. 915, 99 S.Ct. 3106, 61 L.Ed.2d 878 (1979); Owen & Moore, *Comparative Negligence in Maritime Personal Injury Cases,* 43 La.L.Rev. 941, 945 (1983).

11.  33 U.S.C. § 905(b) (Supp. II 1984).

12.  451 U.S. 156, 166–78, 101 S.Ct. 1614, 1622–27, 68 L.Ed.2d 1 (1981).

13.  709 F.2d 1031, 1036–1040 (5th Cir.1983).

14.  451 U.S. at 167–75, 101 S.Ct. at 1622–26.

15.  *Id.* at 167, 101 S.Ct. at 1622.

16.  709 F.2d at 1036.

17.  *Id.*

18.  *Id.* at 1038–39.

19.  *Scindia,* 451 U.S. at 172, 101 S.Ct. at 1624.

that it had a duty "to supervise the stevedoring operations," [20] and devotes two paragraphs to discussing whether the owner in that case had in fact done so. A fortiori, the owner has a duty to refrain from an independent act of negligence.

A simple illustration will suffice: if a crew member should know that longshoremen are working in a hold and negligently drops a hammer into the hold striking a longshoreman and injuring him, the vessel is responsible notwithstanding that the unloading process has begun. The hatch cover that injured Perry was being lowered by the crew. Therefore it is inconsequential whether the captain of the vessel or the crew member who was operating the hatch-closing mechanism actually knew that the longshoremen had returned to work on the hatch cover and that Scott and other members of the gang were in a position of danger. It suffices that they should have known it, although we add that the magistrate implied some skepticism about the captain's testimony that, despite the fact that he was standing only a few fee from hatch No. 6 and observing the operation, he did not see the longshoremen on the hatch cover.

The shipowner does not raise the question of the basis on which the court might hold it liable for a breach of duty to the stevedore. We deduce from the magistrate's opinion that, had the question been directly posed, the magistrate would have found that the owner had a duty to the stevedore not to injure the stevedore's employees and impose damage on the stevedore thereby.

The vessel owner asserts that, in any event, the stevedore should bear the majority of the responsibility for the injury to Perry. We cannot, however, find fault with the magistrate's apportionment. Presumably it was based on the thought that the stevedore was negligent because its foreman instructed Perry to go to work, but the crew was more at fault for failing thereafter to see him in a position of peril and avert the injury.

The district court inferentially found no fault on Perry's part. The owner argues that Perry jumped onto the coaming suddenly, the danger lay in his standing on the coaming, there was no danger in standing on the hatch cover, as Scott was doing, and the crew could not anticipate Perry's foolhardiness. These are plausible arguments, but the magistrate, who heard the testimony, did not credit them. Instead, he found that Perry was ordered to go to work, he jumped on the coaming to assist Scott, and he believed, not unreasonably, that the hatch was closed. Each of these findings is supported by testimony in the record, and we cannot, therefore overturn, as clearly erroneous,[21] the conclusion that Perry was not negligent.

For these reasons, the judgment is AFFIRMED.

---

**20.** *Helaire,* 709 F.2d at 1040.

**21.** *See* Fed.R.Civ.P. 52(a).