HARTFORD ACCIDENT &
INDEMNITY COMPANY,
Plaintiff–Appellant,

v.

COSTA LINES CARGO SERVICES,
INC., et al., Defendants,

Evergreen Marine Corporation (New York) Ltd., Etc., et al.,
Defendants–Appellees.

Nos. 89–3020, 89–3293.

United States Court of Appeals,
Fifth Circuit.

May 31, 1990.

designation.

Gerard J. Sonnier, Lance S. Ostendorf, Michael J. Maginnis, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for plaintiff-appellant.

Robert B. Deane, Thomas D. Forbes, Douglas L. Grundmeyer, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Costa Lines Cargo Services, Inc.

Allen J. Krouse, III, Miles P. Clements, Lemle & Kelleher, New Orleans, La., for Evergreen.

D. Russell Holwadel, Robert M. Johnston, Adams & Johnston, New Orleans, La., for No Private Patrol.

Before REAVLEY and KING, Circuit Judges, and LAKE, District Judge.[*]

KING, Circuit Judge:

Hartford Accident and Indemnity Company filed an action in state court which we construe as a *Burnside* claim under *Federal Marine Terminals, Inc. v. Burnside Shipping, Co., Ltd.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969). The action was later removed to federal court and summary judgment was granted to the defendants. We conclude that complete diversity exists, that an objection to removal was waived, that the district court properly refused to stay these proceedings, that the district court did not abuse its discretion in denying plaintiff's motion for voluntary dismissal and that summary judgment was proper.

## I. *Facts and Proceedings Below*

On November 25, 1987, Hartford Accident and Indemnity Company (Hartford), a Connecticut insurer, filed an action in state court as compensation insurer for New Orleans Marine Contractors (NOMC), a stevedoring company. Hartford alleged that it was entitled to reimbursement for workers

[*] District Judge of the Southern District of Texas, sitting by designation.

compensation benefits voluntarily paid to Melville Maher (Maher), a worker injured when the truck he was driving struck a steel framework trailer chassis at NOMC's container facility. Hartford named as defendants Costa Container Lines of Italy and Costa Lines Cargo Services, Inc. (collectively, Costa)—an ocean carrier and its agent who chartered a vessel docked at the terminal where Maher was injured. Also named as defendants were Evergreen Marine Corporation of New York, Evergreen Marine Corporation (Taiwan), Ltd., Evergreen Marine Corporation, Ltd. (collectively, Evergreen)—the owner of the parked chassis struck by Maher; the New Orleans Private Patrol Service, Inc. (NOPPS)—the security unit for the NOMC facility; and the Board of Commissioners of the Port of New Orleans—the alleged owner of the property. Finally, Hartford joined Mr. and Mrs. Melville Maher (Mahers), Louisiana citizens, as party defendants pursuant to Louisiana Code of Civil Procedure Article 644.[1] The Mahers subsequently filed a separate action in Louisiana state court, on November 28, 1987, and Hartford intervened in that action.

On November 26, 1986, the M/V Olandia was docked on the Industrial Waterway in the Port of New Orleans at the France Street Terminal, a terminal operated by NOMC. Costa had chartered the vessel, which was owned and manned by another company. By contract, NOMC performed all stevedoring activities for Costa in New Orleans—including, loading and unloading vessels and moving containers within the yard on wheeled conveyances, flatbed trailers or steel framework trailer chassis owned by Costa and other shippers. NOMC controlled the movement, storage and parking of chassis within its facility.

Maher, a trailer interchange receipt clerk and member of the International Longshoreman's Association, was assigned to the NOMC terminal. At approximately 5:30 on November 26, Maher was driving a pick-up truck owned by NOMC and struck a parked empty chassis owned by Ever-

green. Hartford contends that the chassis' lack of front lights, reflectors or other illumination was a cause of the accident. Hartford also contends that NOPPS' failure to turn on certain lights at the facility contributed to the accident. Hartford, as compensation carrier and insurer for NOMC, voluntarily paid compensation to Maher under the Longshore and Harbor Workers' Compensation Act (LHWCA). Hartford subsequently filed this action in state court against the above named defendants.

On January 20, 1988, the defendants filed a petition for removal to federal district court, alleging complete diversity. Discovery began on February 2, 1988. In May, Hartford sought to remand the action back to state court, contending that the Mahers should be realigned as plaintiffs, thereby destroying diversity. On June 21, 1988, the district court denied Hartford's motion but directed counsel to submit briefs on the possibility of a stay pending resolution of the Mahers' state court proceedings. Costa moved for summary judgment in June 1988, and, the following month, Hartford sought reconsideration of the denial of its motion to remand. On July 29, 1988, the district court granted Costa's motion for summary judgment, denied Hartford's motion for reconsideration and refused to stay the federal proceedings.

Hartford then sought voluntary dismissal without prejudice of the entire action on September 27, 1988. The defendants filed oppositions. In addition, Evergreen and NOPPS filed motions for summary judgment. On December 7, 1988, the same day final judgment was entered in favor of Costa, Hartford again sought remand alleging, for the first time, that removal was improper under 28 U.S.C. § 1441(b) because certain defendants were residents of the state where the action was originally filed. Hartford's motion to dismiss was denied, and its motion to remand was dismissed as moot. On January 4, 1989, Hartford filed notice of appeal from the district

---

**1.** The Louisiana Code provides that a necessary or indispensable plaintiff who refuses to sue may be joined as a defendant. La.Code Civ. Proc.Ann. art. 644.

court's final judgment dismissing Costa. Subsequently, the district court granted summary judgment to the remaining defendants, and Hartford again appealed. Both appeals were later consolidated.

Hartford claims that complete diversity is lacking, that removal was improper, that the district court abused its discretion in refusing to stay this action or grant its motion for voluntary dismissal and that the district court erred in granting summary judgment to Costa, Evergreen and NOPPS. We disagree and affirm.

## II. *Diversity Jurisdiction*

Hartford contends that complete diversity is lacking because the Mahers, though aligned as defendants under Louisiana Code of Civil Procedure Article 644, are properly considered plaintiffs and as such, are not diverse to certain defendants. According to Hartford, its claim for reimbursement of LHWCA compensation and benefits paid to the Mahers is a "lien" on any recovery the Mahers may obtain against the defendants, and Hartford's action is therefore essentially one in subrogation. Hartford sees the Mahers as indispensable to its subrogation claim, and properly viewed in light of their ultimate interests, the Mahers should be realigned as plaintiffs. Alternatively, Hartford asserts that even if its claim is viewed as a *Burnside* action for a breach of a duty owed the stevedore-employer (rather than a subrogation action based on a wrong to the Mahers), the Mahers are still necessary parties who should be aligned as plaintiffs, destroying diversity.

The nature of Hartford's claim, as either a subrogation claim or a *Burnside* action, determines the status of the Mahers in relation to this case. The Mahers' status, in turn, controls whether they should be considered in assessing diversity jurisdiction. Our decision in *Peters v. North River Ins. Co.*, 764 F.2d 306 (5th Cir.1985) is instructive. As *Peters* explains, a *Burnside* claim is entirely separate, both in nature and in origin, from an employer/carrier's subrogation right.

An employer's right to subrogation allows it reimbursement for LHWCA compensation paid to an injured employee. This right is derivative of the third parties' breach of a duty to the worker. *Id.* at 312, 319. A *Burnside* claim, on the other hand, allows an employer/carrier who has paid LHWCA compensation to assert a direct action in tort (or other applicable theory) against the third party or parties who caused the injury. *Id.* at 312–13; *see also Burnside*, 394 U.S. at 416–17, 89 S.Ct. at 1151. "A *Burnside* cause of action is an *independent* cause of action based on the third party's independent wrong to the employer." *Peters*, 764 F.2d at 320 (emphasis in original).[2]

The subrogation right and *Burnside* claim are controlled by different players. Because the source of a subrogation right is the wrong done to a worker, the worker controls the claim to which the subrogation right attaches. Although the employer/carrier has a subrogation interest, absent statutory assignment,[3] " 'exclusive

---

**2.** Where the shipowner fails to provide a safe place to work and the stevedore is damaged, the stevedore or its carrier may maintain an action to recover compensation payments. As Professor Schoenbaum explains:

A *Burnside* claim is useful especially where the employer's section 933(b) claim is unavailable or insufficient to cover its full compensation liability. To recover, the employer must allege facts showing a breach of the duty to care for those on board the vessel and the payment of compensation to the injured employee. Liability for the breach of that duty extends to responsibility for compensation payments that it is reasonably forseeable that a stevedore will have to make to its employees....

T. Schoenbaum, *Admiralty and Maritime Law* § 6–13 (1987 & Supp.1989).

**3.** "[S]tatutory assignment does not occur until a formal compensation order has been entered following administrative proceedings. Until that time, the employer is powerless to assert the worker's cause of action." *Peters*, 764 F.2d at 317; *see also Pallis Shipping Agency, Ltd. v. Davis*, 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983); *Hartford Accident & Indem. v. Oceancarrier Shipholding of Belgium*, 799 F.2d 1093, 1095 (5th Cir.1986). After receiving formal compensation from the stevedore, the longshoreman has six months within which to bring an action against the third party. If the longshoreman does not seek relief within the six

control of the action' remains with the worker...." *Id.* at 317 (*citing Rodriguez v. Compass Shipping Co.*, 451 U.S. 596, 600–01, 101 S.Ct. 1945, 1949, 68 L.Ed.2d 472 (1981)). Included within the scope of the worker's control is the power to commence suit. *Id.* at 316. ("[T]he worker's cause of action should be treated as a single, unitary cause of action for almost every purpose [including] commencing prosecution of the lawsuit...."). The *Burnside* action, being an action based on a wrong directly to the employer, is the flip side of the coin—controlled by the employer/carrier. *See* T. Schoenbaum, *Admiralty and Maritime Law* § 6–13 (1987 & Supp.1989).

■ With *Peters* teachings in mind, Hartford's arguments crumble. First, as there was no statutory assignment and this action was brought by Hartford, Hartford's claim cannot be characterized as a right of subrogation. Only the Mahers could bring the worker's cause of action to which the subrogation right attaches.[4] Hartford's alternative suggestion that the Mahers are necessary parties even if this action is characterized as a *Burnside* cause also fails.[5] A *Burnside* action is one by and for a wrong done the employer. The employee has no interest in the action. Thus, the Mahers are at most formal parties to this *Burnside* action and, as such, are not considered in assessing the existence of complete diversity. *Salem Trust Co. v. Manufacturers' Finance Co.*, 264 U.S. 182, 189–90, 44 S.Ct. 266, 267, 68 L.Ed. 628 (1924) ("Jurisdiction cannot be defeated by the joining of formal or unnecessary parties."); *see also* 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.161 (2d ed. 1990).

## III. *Removal*

Hartford next contends that removal under 28 U.S.C. § 1441(b) was improper because two named defendants, the Board of Commissioners of the Port of New Orleans and NOPPS, are citizens of the state in which the action was brought.[6] Costa, Evergreen and NOPPS argue in reply that Hartford waived any objection to removal by failing to raise such objection until after summary judgment.

On January 20, 1988, this action was removed to federal court. On May 3, 1988, Hartford filed a motion to remand, specifically claiming that complete diversity was lacking. The district court rejected Hartford's motion to remand and Costa moved for summary judgment. Prior to entry of summary judgment, Hartford sought reconsideration of its motion to remand, again premising its argument on lack of diversity. The district court refused to reconsider the matter on July 29, 1988. In neither the initial motion to remand, nor the motion for reconsideration, did Hartford raise the issue under 28 U.S.C. § 1441(b) that removal was improper because certain defendants were of the state where the action removed to federal court was originally brought. Summary judgment in favor of Costa was granted on July 29, 1988, and Evergreen moved for summa-

---

month period, the acceptance of the compensation award shifts to the stevedore the right to go against the third party. 33 U.S.C. § 933(b); *see also Bloomer v. Liberty Mutual Ins. Co.*, 445 U.S. 74, 77–78, 100 S.Ct. 925, 927, 63 L.Ed.2d 215 (1980). Here, Hartford made a voluntary payment of compensation, and there was no formal compensation award. Thus, no statutory assignment of the Mahers' claim occurred.

4. The Mahers have in fact brought suit in Louisiana state court, and Hartford has intervened to assert its right of subrogation.

5. Hartford suggests that a *Burnside* action cannot precede an employee's suit. This argument was rejected in *Hartford Accident & Indem. v. Oceancarrier Shipholding of Belgium*, 799 F.2d 1093, 1096 (5th Cir.1986):

Because Perry has not sued the shipowner, there was no recovery on which the insurer could establish a lien either. In the absence of either an assignment of the employee's rights or a recovery on which a lien might be imposed, the insurer's claim could be asserted only by derivation from the stevedore's *Burnside* right of direct action against the shipowner....

6. Under 28 U.S.C. § 1441(b), even where an action could have been originally brought in federal court, the defendant may not remove the state action to federal court if the defendant is a citizen of the state in which the action was filed.

ry judgment on October 31, 1988. Five months after Costa's summary judgment, on December 6, 1988, Hartford finally raised the § 1441(b) problem. Hartford indicated it had "apparently overlooked" this ground and noted that it was "somewhat embarrassed" that it had not brought the issue to the court's attention earlier. This motion was apparently dismissed by the district court as moot.

■ In *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972), the Court addressed the issue of waiver of objections to removal. There, a suit on a promissory note was improperly removed to federal court under 28 U.S.C. § 1444. However, the case proceeded to trial on the merits without objection. On appeal, the court of appeals raised *sua sponte* the improper removal and remanded to the state court. The Supreme Court reversed. It held that when:

(1) an action is improperly removed to federal district court;

(2) the case is tried on the merits; and

(3) without objection;

"the issue in subsequent proceedings is not whether the case was improperly removed but whether the district court would have had jurisdiction of the case had it been filed in that court." *Id.* at 702, 92 S.Ct. at 1347; *see also Lirette v. N.L. Sperry Sun, Inc.*, 820 F.2d 116, 117 (5th Cir.1987) (en banc). Thus, where the district court would have had diversity jurisdiction and the three *Grubbs* factors are present, the plaintiff has waived its objection to removal. The *Grubbs* rule spawns from "concerns for judicial economy and from a desire to prevent a party that bided its time before raising a defect in removal jurisdiction from getting a second bite at the apple" in state court. *Chivas Products, Ltd. v. Owen*, 864 F.2d 1280, 1289 (6th Cir.1988); *see also Kidd v. Southwest Airlines, Co.*, 891 F.2d 540, 546 (5th Cir.1990).

■ In this case, it is clear that the action was improperly removed under § 1441(b), and we have held that summary judgment satisfies the *Grubbs* requirement that a case be tried on the merits. *Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1074

n. 16 (5th Cir.1980) (The "trial on the merits" requirement comprehends a full trial, as well as a summary dismissal.); *see also Kidd*, 891 F.2d at 546. Thus, our inquiry boils down to whether Hartford's failure to make the appropriate objection to removal under § 1441(b) until after summary judgment meets the third *Grubbs* requirement where Hartford did object to removal before summary judgment, but on a non-meritorious ground, lack of diversity of citizenship.

A similar situation was presented in *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209 (9th Cir.1980). Fristoe filed a complaint in state court against multiple defendants alleging several causes of action—including conspiracy, breach of contract, fraudulent misrepresentation and certain constitutional violations. One day after the designated period for filing a petition for removal under 28 U.S.C. § 1446, defendant-Reynolds sought removal. Rather than challenge the removal as untimely, Fristoe objected to the removal as improper because the removal petition was not signed by all the defendants and, Fristoe claimed, he had only alleged common law claims and not a federal question. On appeal, the court addressed each of the objections to removal separately, and rejected on the merits Fristoe's objection to subject matter jurisdiction and his contention that all defendants had to sign the removal petition. *Id.* at 1211–13. Turning to the untimeliness of the petition for removal, the Ninth Circuit concluded that Fristoe had waived this objection under *Grubbs*. The court recognized that the time limit for removal was mandatory and that a timely objection to the late petition would have defeated removal. *Id.* at 1212. However, since the case had proceeded to summary judgment with Fristoe "sitting on his rights ..., Fristoe had waived the untimeliness of the removal petition by failing to object *on these grounds* until this appeal...." *Id.* at 1212–13 (emphasis added). *Accord Green v. Zuck*, 133 F.Supp. 436 (S.D.N.Y.1955).

The *Fristoe* decision makes good sense in light of the policies underlying *Grubbs*.

**360**

Judicial economy is frustrated when a plaintiff raises an objection to removal but fails to raise a *proper* objection until after defeat on the merits. Moreover, the result of a rule contrary to *Fristoe* would be a second bite at a case in state court for a plaintiff who voices an appropriate objection to removal only after an adverse ruling in federal court. *See generally Dukes v. South Carolina Ins. Co.,* 770 F.2d 545, 548 (5th Cir.1985).

Because Hartford failed to raise its § 1441(b) objection to removal until after summary judgment, we hold that it waived such objection. Like the plaintiff in *Fristoe,* Hartford failed to make an appropriate objection until after an adverse ruling on the merits, and we will not condone a circuitous trip back to state court for a double dip at success in this action.

## IV. *Stay and Voluntary Dismissal*

Hartford next contends that the district court erred in failing to stay the federal court proceedings in light of the Maher's subsequent state court action. According to Hartford, the Maher's state court action is "virtually identical" to the removed action, and a single proceeding would promote judicial economy. Alternatively, Hartford summarily claims error in the district court's failure to grant Hartford's motion for voluntary dismissal without prejudice.

■ Before a court considers the propriety of a stay pending disposition of a state court action, the federal and state cases should be "parallel"—"involving the same parties and the same issues." *Republic-Bank, Dallas, Nat'l Assoc. v. McIntosh,* 828 F.2d 1120, 1121 (5th Cir.1987) (citing *PPG Indus., Inc. v. Continental Oil Co.,* 478 F.2d 674, 682 (5th Cir.1973)); *see also Mendiola v. Hart,* 561 F.2d 1207, 1208 (5th Cir.1977). As Hartford's federal case is not "parallel" with the Maher's state court proceeding, we need not reach the question of whether the district court abused its discretion in failing to stay these proceedings. Hartford's claim in federal court is a *Burnside* cause of action. As discussed *supra,* that action is "based on the third party's independent wrong to the employer." *Peters,* 764 F.2d at 320. In contrast, the Mahers' action in state court is a separate claim based on a wrong to the worker. Thus, although both cases involve the same underlying episode and entail significant overlapping proof, they concern independent wrongs. Moreover, the parties in the actions are disparate. The action in federal court concerns Hartford as plaintiff, whereas the action in state court involves the Mahers as the complaining party with Hartford holding only a subrogation interest in any recovery received. Thus, because the state and federal cases address distinct interests and concern different litigants, the district court appropriately refrained from staying this action.[7]

■ Nor do we find that the district court erred in failing to grant Hartford's motion for voluntary dismissal. The district court's decision to deny a motion for voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2) is reviewed for abuse of discretion. *Yoffe v. Keller Indus., Inc.,* 580 F.2d 126, 129 (5th Cir.1978), *cert. denied,* 440 U.S. 915, 99 S.Ct. 1231, 59 L.Ed.2d 464 (1979). If a defendant will suffer some cognizable prejudice greater than the mere prospect of a second lawsuit, voluntary dismissal without prejudice should be denied. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2364 (1971 & Supp.1990). Important in assessing prejudice is the stage at which the motion to dismiss is made. Where the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal. *Kramer v. Butler,*

---

**7.** We note that the Supreme Court has recognized that the mere pendency of a parallel state court proceeding does not, of itself, stay consideration in federal court. Rather, only in the face of the "clearest of justifications" and in the presence of certain "exceptional circumstances" should a federal court stay its hand. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 819, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976); *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1982).

845 F.2d 1291, 1294–95 (5th Cir.) (no abuse of discretion for district court to deny plaintiff's motion for voluntary dismissal where habeas corpus petition litigated for one year and full evidentiary hearing conducted "at significant expense to the state and federal governments"), *cert. denied,* — U.S. ——, 109 S.Ct. 168, 102 L.Ed.2d 138 (1988); *Pace v. Southern Express Co.,* 409 F.2d 331, 334 (7th Cir.1969) (no abuse of discretion in denying plaintiff's motion to dismiss where case was pending one and one-half years prior to submission of motion, considerable discovery was undertaken, and defendant had briefed motion for summary judgment); *Williams v. Ford Motor Credit Co.,* 627 F.2d 158, 159–60 (8th Cir.1980) (district court abused discretion in granting plaintiff's motion for voluntary dismissal where action pending 18 months, extensive litigation conducted, and a verdict in favor of the plaintiff was rendered but the plaintiff apparently feared trial court would grant the defendant's motion for JNOV).

■ Hartford moved to dismiss this action without prejudice nearly ten months after the action was removed to federal court. Before that motion was filed, hearings were conducted on various issues, significant discovery was had, Costa had already been granted summary judgment, and a jury trial had been set for the remaining defendants. Clearly, the defendants expended significant time and effort litigating this action and Hartford was far less than prompt in seeking voluntary dismissal. Thus, we cannot say, based upon the record before us, that the district court abused its discretion in concluding that the prejudice the defendants would suffer if dismissal were granted warranted denial of Hartford's motion for voluntary dismissal without prejudice.

### V. *Summary Judgment*

Hartford claims that the district court granted summary judgment prematurely because it was not given a "fair opportunity to conduct discovery." Alternatively, Hartford contends that genuine issues of material fact exist precluding summary judgment as to Costa, Evergreen and NOPPS.

### A. *Ripeness for Summary Judgment*

■ In addressing claims that summary judgment was prematurely granted, we have emphasized that the complaining party is "required to do something more than state that discovery might reveal something of which [it was] not aware." *Woods v. Federal Home Loan Bank Bd.,* 826 F.2d 1400, 1414 (5th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 422 (1988); *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1123 (5th Cir. 1988). Hartford has alleged nothing more than a generalized claim that further discovery will aid its case. This action was in federal court for over six months before the first summary judgment motion was granted to Costa. Significant discovery was conducted, including a number of depositions in which Hartford participated. Hartford contends that it refrained from affirmative discovery out of fear that it would be considered to have consented to removal. *See Johnson v. Odeco Oil & Gas Co.,* 864 F.2d 40, 42 (5th Cir.1989) (non-removing party's participation in discovery and other pretrial litigation amounted to waiver of right to remand). However, significant discovery was conducted in which Hartford participated and "[i]f material facts known to the plaintiff were omitted from the record, discovery was not needed to develop them." *Woods,* 826 F.2d at 1414. Moreover, Hartford's fear of consent to the federal forum should have been obviated by the looming motion for summary judgment. Yet, in the month following Costa's filing for summary judgment, Hartford propounded no affirmative discovery. Even now, Hartford can lend no more than a general claim that further discovery will help. Under these facts, we cannot say that the district court's entry of summary judgment was premature.

### B. *Summary Judgment for Costa*

■ Hartford contends that a genuine issue of material fact exists as to whether Costa supplied sufficient properly illumi-

nated chassis for offloading and inspection of containers from the M/V Olandia. The district court rejected Hartford's claim and granted summary judgment to Costa, reasoning:

> Maher was injured when the truck he was driving collided with a parked truck chassis at the facility of [NOMC]. Costa Lines did not employ Mr. Maher. Costa neither owned the truck chassis nor the truck Mr. Maher was driving. NOMC had exclusive control of the facility where the accident occurred. ... The question of whether Costa Lines provided a sufficient number of safe, illuminated chassis is irrelevant to the present suit. What is essential is that Costa Lines did not own or control the chassis, the truck, or the facility involved in the accident. The accident has no nexus with Costa Lines or their vessel. Therefore, there is no possible theory upon which liability could be imposed.

We affirm a grant of summary judgment where "we are convinced, after an independent review of the record, that 'there is no genuine issue as to any material fact' and that the movant is 'entitled to judgment as a matter of law.'" *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987); *Barrett Computer Serv. Inc. v. PDA, Inc.*, 884 F.2d 214, 215–16 (5th Cir. 1989).

Summary judgment was properly granted to Costa. Costa owned neither the chassis nor the truck involved in the accident and played no part in the operations of the France Road Terminal. Rather, NOMC possessed full control of the operations at the terminal—including, discharge, moving and parking of containers from vessels. Costa did not supervise NOMC's operations and had no reason to believe NOMC was performing its unloading in an unsafe manner. Costa's failure, if any, to supply sufficient illuminated chassis is completely removed from Maher's collision with an Evergreen chassis parked by NOMC. Thus, we conclude that the district court did not err in granting summary judgment to Costa.

### C. *Summary Judgment for Evergreen*

■ Hartford essentially contends that even if Evergreen, the owner of the chassis involved in the collision, transferred its chassis to NOMC, Evergreen continues to be chargeable for structural defects in the chassis existing prior to transfer. *See Ross v. La Coste de Monterville*, 502 So.2d 1026 (La.1987). The district court concluded, however, that no genuine issue of material fact existed upon which to base a claim of recovery for Hartford:

> [N]one of the Evergreen personnel were in any way involved with the chassis in question from November 12, 1986, when the chassis was placed in the NOMC facility until after the accident on November 26, 1986. Ms. Hearn testified that at no time subsequent to November 12, 1986, did any Evergreen employee enter NOMC's yard to inventory, inspect, use, move, conduct maintenance or repair the chassis nor were Evergreen employees in involved [sic] in the selection, placement [or] storage of the chassis in question nor any other company instructed or authorized to do so. This testimony is undisputed.
>
> On the day of the accident, the chassis was in the NOMC facility. It was not being used to service an Evergreen vessel, which was the chassis' only authorized use. NOMC cannot identify who placed the chassis on berth 5. Evergreen's October 1, 1985, contract with NOMC required NOMC to receive, inspect, move and store Evergreen's containers and chassis. There is no basis in the allegation that Evergreen maintained care and custody of the chassis in question.... What is essential is that Evergreen had no control or custody of the chassis at the time of the accident or [of] the facility involved.

Since Evergreen did not authorize the use of its chassis for other vessels, the parking of its chassis arose out of conduct by NOMC beyond the terms of the contract by which Evergreen transferred possession of the chassis to NOMC. Moreover, Evergreen played no role in the activities at the France Road Terminal, and it did not move

or inspect the chassis involved in the accident after its initial delivery to the terminal. In light of these undisputed facts, we conclude that the district court properly granted summary judgment to Evergreen.

### D. Summary Judgment For New Orleans Private Patrol Service

▬ In the district court, Hartford contended that NOPPS was negligent in failing to turn on lighting in the area of the accident or in failing to report a potentially dangerous situation. The district court determined that there was no disputed issue of material fact as to these claims and that NOPPS was entitled to summary judgment:

The question of whether New Orleans Patrol was negligent in failing to turn on lighting as directed has been negated by the testimony of Mr. Patrick M. Morrissey, the President and corporate designee of NOMC. Mr. Morrissey stated in his deposition that the New Orleans Patrol's guards did not have the discertion [sic] to turn on lights on a berth where no ship was being worked on. Mr. Morrissey also testified that the accident occurred on berth 5 of the NOMC facility and there was only one vessel at berth 6 in the facility at the time of the accident. In addition, Mr. Morrissey admitted that the only lights which should have been lit on berth 5 should have been the security lights which came on from an electric eye. Therefore, New Orleans Patrol was not negligent for failing to turn on the appropriate lights because it is the testimony of the President of the NOMC that the lights should not have been turned on at that berth at the time of the accident by New Orleans Patrol. Hartford implies in opposition to the motion that there is some confusion as to where this accident occurred. There should be no question as to where the accident occurred as Hartford alleges in its complaint that the accident occured [sic] while "Maher was operating his vehicle along the dockside of the NOMC facility." Moreover, this argument is invalid as Mr. Morrissey testified that he saw that the lights were on in the terminal at berth 5.

Hartford's second argument that New Orleans patrol was negligent in failing to report any dangerous situations has been wholly unsubstantiated by the testimony of Mr. James C. Finley who conducted the investigation of this accident on behalf of NOMC and is a corporate designee of NOMC. Mr. Finley testified that he was not aware of any facts which would indicate that any of the NOMC's lights were not operating correctly at the time of the accident. Mr. Finley's testimony is corroborated by Mr. Morrissey.

Hartford "disputes the clarity of Mr. Morrissey's testimony due to the confusion created by the manner in which he was questioned regarding the lighting in the facility area." Hartford infers that this confusion led the district court to focus on lighting in the vessel area rather than lighting in the shoreside terminal area where the accident allegedly occurred. We agree with Hartford that Morrissey's deposition testimony was, at times, less than clear. However, the undisputed facts are that the accident occurred at berth 5, that NOPPS had no discretion to turn on the lights at berth 5 because the berth held no vessel and that the "terminal lights in the area of berth 5" *were* on. These undisputed facts warrant summary judgment for NOPPS as to its alleged negligence in illuminating the area of the accident. As for Hartford's claim that NOPPS failed to warn of an unreasonably dangerous situation, Hartford has not presented disputed issues of material fact supporting this theory. We cannot say, therefore, that summary judgment was improperly granted to NOPPS.

### VI. Conclusion

Having reviewed all of Hartford's claims of error, we find none to be compelling.

AFFIRMED.