**M. O. N. T. BOAT RENTAL SERVICES, INC., Plaintiff-Appellant,**

v.

**UNION OIL COMPANY OF CALIFORNIA et al., Defendants-Appellees.**

No. 77–1086.

United States Court of Appeals, Fifth Circuit.

March 14, 1980.

John Poitevent, New Orleans, La., for plaintiff-appellant.

John J. Cooper, New Orleans, La., for defendants-appellees.

Before JONES, BROWN and RUBIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

With a coastline running from Savannah, Georgia, to Port Isabel, Texas, and including in years past the Canal Zone, this Circuit is often the first to face issues involving the admiralty. The novel issue here is the interpretation of a "protest clause" contained in a time charter for a crew boat servicing offshore petroleum drilling operations.[1]

This action for contractual and tort indemnity was brought by M.O.N.T. Boat Rental Services, Inc. (M.O.N.T.), the owner of the M/V *Bobby O*, against Union Oil Company of Central America (Union).[2] Union chartered the 95-foot *Bobby O* from M.O.N.T. pursuant to a written time charter, which specified that the crew boat was to transport personnel and light supplies in the area off the coast of Nicaragua. During such a mission a member of the *Bobby*

---

1. A similar protest clause was considered by Judge Sear in a subsequent case, *Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 462 F.Supp. 485, 492 (E.D.La.1978), *appeal docketed*, No. 79–1378 (5th Cir. Feb. 5, 1979), although the analysis there is not relevant to the instant appeal. The charter party in this appeal is somewhat similar to The Baltic and International Maritime Conference's "Supplytime" Uniform Time Charter Party for Offshore Service Vessels, Form No. 7–15, *reprinted in* 2B R. Benedict, Admiralty 7–95 to 7–106 (7th ed. 1979).

2. Union Oil Company of Central America is a wholly-owned sibling of Union Oil Company of California. Union Oil of California was dismissed as a defendant pursuant to stipulation by the parties. The third party complaint of Union against Utica Mutual Insurance Co. was rendered moot by the disposition of the case, except as to attorney's fees and costs.

O's crew was injured. The crewmember sued M.O.N.T. and recovered damages under a claim of Jones Act negligence. *Herbert v. M.O.N.T. Boat Rental Service, Inc.*, No. 74–2816 (E.D.La. June 27, 1975). M.O.N.T., after satisfying that judgment, then brought the instant action in an attempt to shift the damages onto the charterer, Union.

The case was tried by the District Court without a jury. After M.O.N.T. completed presenting its evidence, the Court granted Union's motion for involuntary dismissal pursuant to F.R.Civ.P. 41(b) and entered the requisite F.R.Civ.P. 54 judgment in Union's favor. We find that the District Court's findings of fact were not clearly erroneous and support the Court's judgment. In affirming the dismissal of the contractual and tort claims, however, we in part differ with as well as augment the reasons given by the District Court.

The time charter in this case contained the usual understanding that the *Bobby O* would perform tasks designated by Union, while M.O.N.T., through the captain, would man, manage and control the operation of the vessel.[3] Thus the charter party would not be breached where the captain in good faith refused to perform a task designated by Union—for example, refusing to sail into 30-foot seas—which he reasonably thought to be unsafe. Should Union feel in good faith that the captain or crew were performing unsatisfactorily, however, it was entitled to have them replaced at M.O.N.T.'s expense.[4]

**3.** Article XVII:

The operation, navigation and management of the vessel shall be under the exclusive control and command of Contractor [M.O.N.T.] and the master and crew. Subject always to the right of the master of the vessel to determine whether the movement may be undertaken, the vessel will be operated, and services herein described will be rendered, at times as requested by Charterer [Union] and the vessel will make such voyages in connection with Charterer's operations as are requested by Charterer.

Article IV: ·

Charterer agrees to restrict the use of the vessel solely to the lawful movement of light

But where the parties' good faith perceptions of the risks involved in a task differ, the above provisions are short of leeway. Thus, the captain might refuse to perform a marginally dangerous task which the charterer might regard as less dangerous. The charterer would therefore perceive the captain's refusal as unsatisfactory conduct, permitting the charterer to demand replacement of captain and crew. The replacement remedy, however, forces a delay in the charterer's operations and does not guarantee a more satisfactory captain or crew.

In order to provide greater flexibility, the charter party in this case contained a relatively new provision which permitted the captain to perform dangerous tasks "under protest," thereby shifting liability for the task onto the charterer, Union. The "protest clause" in Article XVII states (emphasis supplied):

Notwithstanding anything to the contrary herein, it is agreed that if any operation, voyage, movement, activity or inactivity on the part of Contractor [M.O.N.T.] or the vessel is insisted upon by Charterer [Union], its agents, employees or representatives, and undertaken by the Master of the Vessel *under protest* on account of the opinion of the Master that said operation, voyage, movement, activity or inactivity is hazardous and likely to cause loss, damage or expense, or loss of life or personal injury, the responsibility for such loss, damage or expense, or loss of life or personal injury, shall thereupon rest solely upon Charterer.

supplies, equipment and personnel incidental to operations in exploration for and/or production of oil, gas and other minerals in the waters offshore along the coast of Nicaragua. The vessel shall carry personnel and light equipment of Charterer and as occasion requires, other persons having business at the site of the operations of Charterer, as directed by Charterer.

**4.** Article XVII: ·

Contractor agrees that should the captain and/or crew of the vessel prove unsatisfactory to Charterer, Contractor, at its expense, shall at the request of Charterer provide a replacement captain and/or crew.

Whether a valid protest was effected controls the contractual issue in this case.

The accident which gave rise to this indemnity action occurred on August 17, 1974. The *Bobby O* and its crew of three had arrived at Puerto Cabesos, Nicaragua. The seas were running between six and fourteen feet; the winds are not revealed by the record. Carl Hills, Union's representative, requested Captain Darwin Vizier of the *Bobby O* to pick up some Union employees from a rig lying approximately six miles offshore. Captain Vizier said the seas were rough but that he would try to reach the rig. On the first attempt, the *Bobby O* sailed less than one-fourth the distance to the rig before it turned back.

The parties dispute what happened after the first return to dock. The District Court found that:

> Later on the 17th, Hills again directed Captain Vizier to pick up the personnel at the location site. . . .
>
> Captain Vizier told Hills that it was rough and dangerous, and the discussion between the two became somewhat heated. However, Captain Vizier never refused to make [a second] trip, but repeatedly assured Hills that he "would try". Captain Vizier did not put Hills on notice either expressly or impliedly that should any accidents occur, Hills would bear the responsibility or that he was going to make the trip "under protest".

M.O.N.T. argues that the Court should have found that: (i) Captain Vizier repeatedly told Hills that it was too rough to leave the dock for a second time; (ii) Captain Vizier was aware that if he refused outright to leave the dock it would result in the termination of his services as Master of the *Bobby O*; and (iii) Captain Vizier never outrightly refused to make the second trip but

he certainly protested.[5] It is undisputed, however, that subsequently a second attempt to reach the rig was made, during which crewmember Gustave J. Herbert fell and injured himself in the galley just after a large wave hit the *Bobby O.*

█ We cannot say that the able District Judge's findings of fact are clearly erroneous. F.R.Civ.P. 52(a); *McAllister v. United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, 1954 AMC 1999 (1954). There is evidence that Hills became upset, Captain Vizier repeatedly pointed out that the seas were rough, and Hills threatened to request that Captain Vizier be replaced. There is also evidence, however, that Hills attempted to persuade Captain Vizier that his vessel was capable of making the trip since a smaller 65-foot shrimp boat was successfully weathering the seas near the offshore rig. There is also evidence that Captain Vizier's reluctance was overcome without significant objection and the captain stated that he would try again to reach the rig. The District Court's conclusion that "Captain Vizier's statements . . . indicated *mere reluctance* . . .," (emphasis supplied) is therefore not clearly erroneous.

█ Whether Captain Vizier's reluctance amounted to the protest envisioned by the charter party is the remaining question. M.O.N.T. did not present any evidence of custom or usage of similar protest clauses within the industry. On appeal, M.O.N.T. argues that Captain Vizier's limited education and ignorance of the existence of the clause should guide our interpretation. But it is hornbook contract law that the objectively determined intent of the parties is the relevant guide. 1 S. Williston, Contracts §§ 20 & 21 (3d ed. 1957); Rest., Contracts §§ 20 & 71 (1932).[6]

---

**5.** M.O.N.T. specifically does not rely upon the entry in the *Bobby O*'s log for August 17, 1974. The entry indicates that a "protest" was made with respect to the second trip. M.O.N.T. concedes and the District Court found that the entry was forged by a unknown party at some time subsequent to the accident. Because M.O.N.T. does not rely upon the forged entry, we do not draw any unfavorable inferences from its existence. *Cf. Lykes Bros. SS Co. v. Union*

*Carbide & Carbon Corp.*, 253 F.2d 444, 448, 1958 AMC 722, 727 (5th Cir. 1958).

**6.** The construction of a maritime contract is normally governed by federal rather than state law. *Halliburton Co. v. Norton Drilling Co.*, 302 F.2d 431, 1963 AMC 2169 (5th Cir. 1962), *cert. denied*, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052, 1963 AMC 2468 (1963). *But cf. Wilburn Boat Co. v. Fireman's Fund Insurance*

Lacking any evidence of custom or usage, and because of a dearth of appropriate precedent, the District Court looked to the general definition of "protest" contained in Black's Law Dictionary 1387 (4th ed. 1957):

A formal declaration made by a person interested or concerned in some act about to be done, or already performed, whereby he expresses his dissent or disapproval, or affirms the act against his will. The object of such a declaration is generally to save some right which would be lost to him if his implied assent could be made out, or to exonerate himself from some responsibility which would attach to him unless he expressly negatived his assent.

The District Court found that Captain Vizier's reluctance did not amount to the very strict, formal declaration requirement indicated by Black's definition.

■ We agree with the District Court to the extent that the protest clause must be strictly applied. Although, properly speaking, this protest clause was one shifting initial liabilities, not one for indemnity, it has in its practical application many of the features and consequences of an indemnity agreement. This protest clause, as does an indemnity agreement clause, has the effect of shifting liability away from the party which otherwise the law might determine is best able to prevent negligent acts from occurring.[7] Indemnity clauses, especially those indemnifying the indemnitee against his own negligence, are in general strictly construed.[8] Certainly in a time, as opposed to bareboat, charter, the shipowner and captain are in the ideal position where matters involving management and control of the vessel are involved. *Dow Chemical Co. v. Dixie Carriers, Inc.,* 463 F.2d 120, 1972 AMC 2137 (5th Cir.), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 525, 34 L.Ed.2d 490, 1973 AMC 539 (1972). *Cf. Nitram, Inc. v. Cretan Life,* 599 F.2d 1359, 1366–67 (5th Cir. 1979); *Hanson & Orth, Inc. v. M/V Jalatarang,* 450 F.Supp. 528, 541 (S.D.Ga.1978); *Camiolo v. Felicitas-Rickmers Line K.G. & Co.,* 449 F.Supp. 18, 19–21 (S.D.N.Y.1978); *Klishewich v. Mediterranean Agencies, Inc.,* 302 F.Supp. 712, 713, 1969 AMC 359, 360 (E.D.N.Y.1969). The protest clause in this case covered matters relating to the control and management of the vessel, matters assigned ordinarily to M.O.N.T. under the provisions of the charter party.[9]

■■ Our examination of the structure of the time charter as well as other indicia of the parties' intent[10] reveals that the reluctant conduct of Captain Vizier did not amount to a protest. But unlike the District Court we do not require a punctilious "formal declaration." Nor do we require

---

*Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, 1955 AMC 467 (1955) (maritime insurance contracts), rev'g, 201 F.2d 833, 1953 AMC 284 (5th Cir. 1953). The charter party in the instant case expressly incorporates Texas law, however. We do not decide which law governs since the relevant federal and state law is the same. *Cf. Walter E. Heller & Co. v. O/S Sonny V.,* 595 F.2d 968, 972–75 (5th Cir. 1979).

**7.** *Cf.* Italia Societa per *Azioni Di Navigazione v. Oregon Stevedoring Co.,* 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732, 740, 1964 AMC 1075, 1086 (1964) ("liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury"); *Brock v. Coral Drilling, Inc.,* 477 F.2d 211, 1973 AMC 1117 (5th Cir. 1973).

**8.** *United States v. Seckinger,* 397 U.S. 203, 211–13, 90 S.Ct. 880, 885–886, 25 L.Ed.2d 224, 233–234 (1970), *rev'g on other grounds,* 408 F.2d 146 (5th Cir. 1969); *Chevron Oil Co. v. E. D. Walton Construction Co.,* 517 F.2d 1119 (5th Cir. 1975). *See also Fireman's Fund Insurance*

*Co. v. Commercial Standard Insurance Co.,* 490 S.W.2d 818 (Tex.1972); *Sira & Payne, Inc. v. Wallis & Riddle,* 484 S.W.2d 559, 560–61 (Tex. 1972); *Mitchell's, Inc. v. Friedman,* 157 Tex. 424, 303 S.W.2d 775 (1957).

**9.** *Compare Lanasse v. Travelers Insurance Co.,* 450 F.2d 580, 1972 AMC 818 (5th Cir. 1971) (charterer operated a crane which was the sole proximate cause of the injury involved), *cert. denied sub nom. Chevron Oil Co. v. Royal Insurance Co.,* 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120, 1972 AMC 1916 (1972), *with Dow Chemical Co. v. Dixie Carriers, Inc., supra* (navigation and control of the vessel had been turned over to the charterer).

**10.** *Navieros Oceanikos, S.A. v. S.T. Mobil Trader,* 554 F.2d 43, 47–48, 1977 AMC 739, 745 (2d Cir. 1977); *Gulf, Colorado & Sante Fe Ry. Co. v. Coca-Cola Bottling Co. of Cleburne,* 363 F.2d 465, 467–69 (5th Cir. 1966).

express invocation of the contractual provision. Instead, the captain must indicate, in a fashion calculated to place a reasonable party clearly on notice, that he is unwilling to risk a voyage unless he is ordered to do so and is relieved of responsibility for the risk. Thus, if Captain Vizier had stated "I'm not going to go unless you order me to," there would have been an effective protest. Here the District Court properly found only a reluctance by the captain, who was willing to at least attempt the voyage. That was not a sufficient protest.

■ Because M.O.N.T.'s contractual claim fails for lack of effective protest, the claim for tort indemnity must be considered. Tort indemnity is separate and distinct from the contractual claim and requires evaluation of different elements. *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296, 303, 1973 AMC 2447, 2455 (5th Cir. 1973), *cert. denied*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572, 1974 AMC 1892 (1974). M.O.N.T. first claims that Union's representative, Hills, had the power to "order" Captain Vizier to leave the dock. The exercise of that power is then argued to constitute "active" and "primary" negligence, as compared to M.O.N.T.'s "passive," "secondary," and "technical" negligence, thus entitling M.O.N.T. to indemnity under the principle of *Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178, 1969 AMC 767 (5th Cir. 1969).[11]

■ While the District Court entered the requisite F.R.Civ.P. 54 final judgment dismissing M.O.N.T.'s case, the Court did not separately state its conclusions of law on the tort indemnity claim, as required by F.R.Civ.P. 41(b) & 52(b).[12] Such findings would have been helpful but are not a jurisdictional requirement for appeal. We can decide the merits of a claim on appeal where " 'a full understanding of the issues [can] be reached without the aid of findings.' " *Davis v. United States*, 422 F.2d 1139, 1142 (5th Cir. 1970) (quoting *Urbain v. Knapp Bros. Manufacturing Co.*, 217 F.2d 810, 816 (6th Cir.), *cert. denied*, 349 U.S. 930, 75 S.Ct. 772, 99 L.Ed. 1260 (1954)). *See also NLRB v. Alterman Transport Line*, 587 F.2d 212, 222 (5th Cir. 1979); *Mongiello Bros. Coal Corp. v. Howghtaling Properties, Inc.*, 309 F.2d 925, 929–30 (5th Cir. 1962); *Hurwitz v. Hurwitz*, 78 U.S.App.D.C. 66, 69, 136 F.2d 796, 799 (1943). We find no necessity to remand on this claim since the District Court's findings of fact permit a complete understanding of the tort indemnity claim.

■ First, the District Court properly found that Captain Vizier did not leave the dock on the second occasion "under protest," much less under unrefusable "orders." Moreover, it is undisputed that the charter party vested sole management and control of the *Bobby O* in the master and crew of the vessel, not in the charterer. Captain Vizier had the contractual right to refuse to make any voyage. He could even refuse to make an "under protest" voyage, although the voyage at issue was neither refused nor "under protest." Union's request to Captain Vizier was "no more than an assertion of its contractual rights," *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 800, 1977 AMC 2109, 2122 (5th Cir. 1977), *cert. denied sub nom., Furness Withy & Co. v. Bunge Corp.*, 435 U.S. 934, 98 S.Ct. 1488, 55 L.Ed.2d 518, 1978 AMC 1894 (1978). If negligent at all Union's request was therefore not active or primary negligence rela-

---

11. *See also Parfait v. Jahncke Service, Inc., supra; Magnum Marine v. Kenosha Auto Transport Corp.*, 481 F.2d 933, 1973 AMC 1944 (5th Cir. 1973); W. Prosser, The Law of Torts 312 (4th ed. 1971).

12. We do have the jurisdictionally necessary F.R.Civ.P. 54 final judgment since the District Court made an express direction for entry of judgment and a finding of no just reason for delay. 10 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2654 (1973).

M.O.N.T. stated a claim for tort indemnity in its complaint and reasserted that claim on appeal. In its presentation and legal argument before the District Court, however, M.O.N.T. referred only to its claim for contractual indemnity. Thus the District Court's failure to state separate findings of law as to the tort indemnity claim is in large part the result of M.O.N.T.'s half-hearted assertion of that claim.

tive to M.O.N.T.'s negligence in bringing about Hebert's injuries. M.O.N.T.'s claim for tort indemnity was therefore properly dismissed.

AFFIRMED.