Barbara RANDALL, et al.

v.

CHEVRON U.S.A., INC., et al.

Civ.A. No. 89–4346, 89–4795.

United States District Court,
E.D. Louisiana.

Feb. 19, 1992.

Louis John Cosenza, Randy Jay Ungar, Ungar & Wheelahan, New Orleans, La., for Barbara S. Randall.

Neal Douglas Hobson, Marion Fagan Skalley, John Randall Santa Cruz, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for Chevron U.S.A., Inc.

David John Plavnicky, Robert Jeffrey Bridger, Lea, Plavnicky & Moseley, New Orleans, La., for Sea Savage Inc.

John Frederick Kessenich, Michael G. Helm, Emmett, Cobb, Waits & Kessenich, New Orleans, La., for American Home Assur. Co.

SEAR, District Judge.

## MEMORANDUM AND ORDER

Theodore Randall drowned while attempting a swing rope transfer from a fixed platform in the Gulf of Mexico to the M/V SEA SAVAGE. At the time of his death, he was employed by Chevron U.S.A., Inc. ("Chevron"). Chevron had time chartered the M/V SEA SAVAGE, from Sea Savage, Inc., owner of the vessel. Plaintiff, Barbara Randall, individually, on behalf of the estate of her late husband and her children, sought damages from Chevron and Sea Savage, Inc. Chevron in turn filed a cross-claim against Sea Savage, Inc., for indemnity pursuant to the charter party. This matter was heard without a jury.

After trial on the merits, Chevron was found to have negligently ordered the vessel to encounter dangerous seas, an act done in its capacity as time charterer.[1] Accordingly, Chevron was cast in judgment for twenty-five percent of plaintiff's total damages. Chevron seeks indemnification from Sea Savage, Inc. for this liability.

The time charter party provides: "Owner shall man, operate, and navigate the vessel. ... [R]esponsibility for the management and navigation and operation of the vessel shall remain at all times in the owner.... Owner hereby agrees to defend, indemnify and hold harmless Chevron against ... all claims for damages, whether to person or property, and howsoever arising in any way directly or indirectly connected with the possession, navigation, management, and operation of the vessel." The time charter agreement parallels the legal responsibilities of owners of vessels and time charterers. The charterer directs the movements of the vessel, but the owner retains possession and control of the vessel.[2]

Sea Savage, Inc. contends that this language does not provide indemnification for any liability of Chevron as time charterer, because Chevron's duties and responsibilities as time charterer do not involve the "possession, navigation, management [or] operation of the vessel." Sea Savage, Inc. emphasizes the traditional demarcation of responsibility between vessel owner and time charterer and that only the vessel owner has control over the "possession, navigation, management [or] operation of the vessel." Sea Savage contends that the time charter agreement only required it to provide indemnification for claims arising out of Sea Savage, Inc.'s duties as owner.

Although this reasoning makes some sense, the authority cited by Sea Savage, Inc. addressing indemnification of time charterers by vessel owners[3] does not support adequately its contention. Sea Savage suggests that these cases hold that time charter indemnity clauses do not indemnify charters for their own fault. This interpretation is overly broad. The cases cited involve transfers from platforms to vessels by way of a crane located on the platform

---

1. *Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 792 (5th Cir.1990), citing *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 388 (5th Cir.1987).

2. T. Schoenbaum, *Admiralty and Maritime Law* 382, § 10–1 (1987).

3. *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580 (5th Cir.1971), *cert. denied sub. nom., Chevron v. Royal Ins. Co.*, 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972); *Hobbs v. Teledyne Movable Offshore, Inc.*, 632 F.2d 1238 (5th Cir.1980); *Smith v. Tenneco Oil Co.*, 803 F.2d 1386 (5th Cir.1986).

and the crane operator *solely* was found negligent. The "charterer" was found negligent in its capacity as platform owner, not in its capacity as charterer. Therefore, the platform owner/charterer was not entitled to indemnity from the vessel owner.

These cases differ from this one and do not command a finding that Sea Savage, Inc. does not owe indemnification to Chevron. Chevron was found negligent for ordering the vessel to encounter dangerous seas. Ordering the vessel to encounter treacherous seas is an act done in Chevron's time charterer capacity, rather than in its capacity as platform owner, thus distinguishing the Fifth Circuit jurisprudence.

Whether Chevron is entitled to indemnification depends upon whether "possession, navigation, management [or] operation of the vessel," as that language is used in the time charter agreement, encompasses the act of ordering the vessel to encounter dangerous seas. Sea Savage maintains its position that this language simply describes the legal responsibilities imposed upon vessel owners in a time charter party and serves to indemnify Chevron for claims arising out of Sea Savage, Inc.'s duties as vessel owner, not for Chevron's liabilities as time charterer. Thus, Sea Savage, Inc. concludes that this language does not refer to any acts of negligence attributable to Chevron in its capacity as time charterer.

Despite the abundance of litigation in this area, this issue never has been addressed squarely. Nonetheless, the Fifth Circuit's discussion in *M.O.N.T. Boat Rental Services, Inc. v. Union Oil Co.*[4] appears to provide an answer.

In *M.O.N.T.*, M.O.N.T. Boat Rental Services, Inc. ("M.O.N.T.") sought contractual indemnification from Union Oil Company of Central America ("Union"). Union had time chartered a vessel owned by M.O.N.T. to transport personnel to and from rigs located offshore. During a mission, a crewmember was injured when he fell just after a large wave hit the vessel. In a separate action, the crewmember sued

M.O.N.T. and, after trial on the merits, M.O.N.T. was cast in judgment. Thereafter M.O.N.T. sought indemnification from Union pursuant to the charter party. The charter party contained a protest clause which shifted responsibility to the charterer for losses arising from tasks undertaken by the master of the vessel *under protest*. M.O.N.T. sought to enforce this provision and argued that, after Union ordered the captain to transport personnel, its captain expressed his reluctance to encounter the dangerous seas. During this mission, the crewmember was injured.

At first glance, the case appears inapposite. First, *M.O.N.T.* involved a protest clause, rather than an indemnification clause. However, this distinction is meaningless because the court favorably compared the protest clause to one for indemnification. "[The protest clause] has in its practical application many of the features and consequences of an indemnity agreement."[5] Second, in *M.O.N.T.*, the vessel owner sought indemnification from the charterer, whereas here the charterer seeks indemnification from the vessel owner. Nonetheless, the case is significant because it involves a charterer's act of ordering the vessel under its control to encounter dangerous seas and discusses a vessel owner's responsibility for management and operation of a vessel under time charter.

Like the charter party in this action, the charter party in *M.O.N.T.* "contained the usual understanding that the [vessel] would perform tasks designated by [charterer], while [vessel owner] . . . would man, manage and control the operation of the vessel."[6] Thus, in both actions, the vessel owner retained responsibility for the management and control of the vessel. The M.O.N.T. and Union charter party, however, contained a unique protest clause, which stated,

[I]t is agreed that if any operation, voyage, movement, activity or inactivity on the part of Contractor [M.O.N.T.] or the

---

**4.** 613 F.2d 576 (5th Cir.1980).

**5.** *Id.* at 580.

**6.** *Id.* at 578.

vessel is insisted upon by charterer [Union], its agents, employees or representative, and undertaken by the Master of the Vessel *under protest* on account of the opinion of the Master that said operation, voyage, movement, activity or inactivity is hazardous and likely to cause loss, damage or expense, or loss of life or personal injury, the responsibility for such loss, damage or expense, or loss of life or personal injury, shall thereupon rest solely upon Charterer.[7]

In evaluating this clause, the court recognized that clauses such as this one serve to shift liability away from the party that the law considers best able to prevent negligent acts from occurring. The court then states,

> Certainly in a time, as opposed to bare-boat, charter, the shipowner and captain are in the ideal position where matters involving management and control of the vessel are involved. The protest clause in this case covered matters relating to the control and management of the vessel, matters assigned ordinarily to M.O.N.T. under the provisions of the charter party.[8]

These statements become significant when the context in which the court examined the protest clause is considered. The indemnitee and vessel owner had been held liable for an injury resulting from the vessel's encounter with dangerous seas, as ordered by the charterer. M.O.N.T. sought indemnification from the charterer for this liability. The court's statements thus imply that the act of ordering the vessel to encounter dangerous seas falls within the purview of management and operation of the vessel. The court recognizes, as does

Sea Savage, Inc., that the vessel owner assumes responsibility for the management and operation of the vessel. The court's statements suggest that the vessel owner and captain maintain the best position to prevent any harm that may arise from an encounter with dangerous seas. Additionally, the court implies that the vessel owner will be liable for such harm, absent a contractual provision to the contrary.

Therefore, the act of ordering the vessel to encounter dangerous seas is an act of "management [or] operation" as that language is used in the charter party. However, because Chevron is seeking indemnification for its own negligence, a second issue is presented. That is, whether the indemnification provision can be construed to indemnify an indemnitee for its own negligence.

▪ Before enforcing an indemnification clause for an indemnitee's own negligence, a court must be firmly convinced that the exculpatory provision reflects the intention of the parties.[9] Once such an intention is found, whether the indemnification clause is enforceable depends upon what law governs the agreement.

▪ Indemnification clauses in maritime contracts are governed by federal maritime law, not state law.[10] Whether the charter party entered into between Chevron and Sea Savage, Inc. is a maritime contract depends upon "the 'nature and character of the contract,' rather than on its place of execution or performance."[11] "'A contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment is subject to mari-

---

7. *Id.*

8. *Id.* at 580. The court ultimately held that the captain's acts of reluctance did not amount to a "protest" as that term was used in the charter party, but this holding is irrelevant to this action.

9. *United States v. Seckinger,* 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970).

10. *Davis & Sons, Inc. v. Gulf Oil Corp.,* 919 F.2d 313, 316 (5th Cir.1990) (quoting *North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.,* 249 U.S. 119, 125, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1919)); *M.O.N.T. Boat Rental v. Union Oil Co.,* 613 F.2d 576. 579 n. 6 (5th Cir.1980).

11. *Davis & Sons, Inc. v. Gulf Oil Corp.,* 919 F.2d 313, 316 (5th Cir.1990) (quoting *North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding*

time law.' " [12] A charter party is defined as a "specialized type of maritime contract for the hire of a vessel." [13] It is a contract for the use of a vessel. There can be little doubt that it is a maritime contract. Therefore, maritime law governs the interpretation of this contract [14]. Thus, I must determine whether the charter party reflects an intent to indemnify the indemnitee for its own negligence under maritime law.

In the Chevron and Sea Savage, Inc. charter party, Sea Savage, Inc. agrees to indemnify Chevron for damages "howsoever arising." [15] *In re Incident Aboard the D/B OCEAN KING* [16] offers guidance on whether this indemnity provision can be construed to include indemnification for the indemnitee's own negligence. The indemnification provision at issue in *D/B OCEAN KING* referred to damages arising "from any cause." The court found that this language unambiguously included indemnification for the indemnitee's own negligence. As there is no notable difference between "from any cause" and "howsoever arising," "howsoever arising" likewise must encompass indemnification for an indemnitee's own negligence. Although *D/B OCEAN KING* applied Louisiana law to the interpretation of the clause, Louisiana law requires more specificity in indemnity clauses and is more restrictive in allowing indemnification for an indemnitee's own negligence [17] than maritime law. Maritime

law, on the other hand, generally recognizes and enforces contract indemnity.[18] If Louisiana law would recognize an intent to indemnify an indemnitee for its own negligence, then surely maritime law would as well.

Sea Savage, Inc. further argues that indemnification for Chevron's own negligence violates public policy, such as that pronounced in Louisiana's Oilfield Indemnity Act [19]. If Sea Savage, Inc. suggests that the Oilfield Indemnity Act (the Act) applies to this contract, it is in error. The Act has no application because maritime law governs the charter party. Sea Savage, Inc., however, may suggest only that the public policy expressed in the Act should void the charter party indemnification clause.

This contention also fails. The Fifth Circuit has awarded negligent tortfeasors indemnification pursuant to maritime contracts.[20] In so doing, the Fifth Circuit did not consider indemnifying an indemnitee for its own negligence contrary to public policy. In addition, maritime law explicitly has carved out only two factual circumstances in which an indemnitee cannot be indemnified for its own negligence. First, contracts releasing a towing company from all liability arising out of its services are contrary to public policy.[21] Second, vessels cannot obtain indemnity from an employer of an employee covered by the

Co., 249 U.S. 119, 125, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1919)).

12. *Id.* (quoting E. Jhirad, A. Sann, B. Chase, & M. Chynsky, *Benedict on Admiralty*, § 182 (1988)).

13. T. Schoenbaum, *Admiralty and Maritime Law*, § 10–1 (1987).

14. *See Atlantic Lines, Ltd. v. Narwhal, Ltd.*, 514 F.2d 726, 731 (5th Cir.1975) ("[T]he interpretation and construction of the charter party is governed by federal law."). ·

15. Exhibit A to Sea Savage's memorandum in support of its motion for summary judgment, filed October 11, 1991.

16. 758 F.2d 1063 (5th Cir.1985).

17. *See, e.g., Orduna S.A. v. Zen-noh Grain Corp.*, 913 F.2d 1149, 1153 (5th Cir.1990); *M.O.N.T.*

*Boat Rental Services, Inc. v. Union Oil Co.*, 613 F.2d 576 (5th Cir.1980).

18. T. Schoenbaum, *supra* note 12, 152, § 4–15 (1987); *see also Texas Eastern Transmission Corp. v. McMoRan Offshore Exploration Co.*, 877 F.2d 1214 (5th Cir.1989), *cert. denied*, 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 321 (1990); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527 (5th Cir.1986).

19. La.Rev.Stat.Ann. 9:2780.

20. *Texas Eastern Transmission Corp. v. McMoRan Offshore Exploration Co.*, 877 F.2d 1214 (5th Cir.1989) (tower held responsible for indemnifying an indemnitee for its negligence), *cert. denied*, 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 321 (1990).

21. *Bisso v. Inland Waterway Corp.*, 349 U.S. 85, 90, 75 S.Ct. 629, 632, 99 L.Ed. 911 (1955).

Longshore and Harbor Workers' Compensation Act, pursuant to the Act.[22] As this case does not involve either exception to the general maritime policy, the indemnification clause is not void as contrary to public policy.

■ Chevron seeks indemnification from the vessel owner for its liability to plaintiff, as well as its attorney fees and costs. In the charter party, Sea Savage, Inc. "agrees to defend, indemnify and hold harmless Chevron against any and all claims for damages ... howsoever arising in any way directly or indirectly connected with the possession, navigation, management, and operation of the vessel." An indemnity clause in a maritime contract, whether governed by maritime or Louisiana law, should be read, as a whole and, unless the provision is ambiguous, its words given their plain meaning. It should be construed to cover all losses reasonably contemplated by the parties.[23]

By the very nature of an indemnity agreement, Chevron recovers any amounts it owes plaintiff. In this charter party however, Sea Savage, Inc. also agrees to "defend" Chevron. The plain meaning of "defend" grants Chevron recovery for its attorney fees. Also, the charter party uses the term "hold harmless." The Fifth Circuit has held that "[t]he duty to indemnity and hold harmless includes the payment of costs and attorney's fees."[24] Yet, the indemnitee cannot recover its attorneys' fees incurred in establishing its right to indemnification.[25] Thus, Chevron's recovery for attorney fees is limited to those fees incurred in defending plaintiff's suit.[26] I refer the determination of the amount of those fees to the Magistrate Judge. The Clerk of Court will determine the amount of costs recoverable, pursuant to Uniform Local Rule 5.04 and 5.041.

■ Chevron filed an intervention in this action to recover the worker's compensation and funeral expenses it paid on behalf of Theodore Randall. Plaintiff recognizes Chevron's right to recover these amounts.[27] As such, plaintiff's judgment will be offset by the worker's compensation payments previously received by plaintiff.

■ Finally, Chevron seeks to recover from Sea Savage, Inc. the worker's compensation it has paid on behalf of Theodore Randall. I have previously held that Mr. Randall was covered by the Longshore and Harbor Worker's Compensation Act. As a LHWCA employer, Chevron has the right to recover compensation payments made on behalf of Mr. Randall from a negligent vessel owner.[28] This right is premised upon the vessel owner's breach of the duty of due care owed to Chevron.[29] From the vessel owner's breach of its duty to the longshoreman, Randall, I infer a breach of the duty owed to Randall's employer, Chevron. "If there had been no breach of duty to the injured employee, there would have been no negligence with respect to his employer...."[30] I have found Sea Savage, Inc. liable for the incompetence of its captain, the lack of training of its captain and

**22.** *Pippen v. Shell Oil Co.,* 661 F.2d 378 (5th Cir. Unit A Nov. 1981).

**23.** *Weathersby v. Conoco Oil Co.,* 752 F.2d 953, 955–56 (5th Cir.1984); *Kemp v. Gulf Oil Corp.,* 745 F.2d 921, 924 (5th Cir.1984); *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 333 (5th Cir.1981).

**24.** *Lirette v. Popich Bros. Water Transport, Inc.,* 699 F.2d 725, 728 (5th Cir.1983).

**25.** *Nathaniel Shipping, Inc. v. General Electric Co.,* 920 F.2d 1256, 1269 (5th Cir.), *modified on other grounds,* 932 F.2d 366 (5th Cir.1991); *Signal Oil & Gas Co. v. Barge W–701,* 654 F.2d 1164, 1178 (5th Cir. Unit A Sept. 1981), *cert. denied,* 455 U.S. 944, 102 S.Ct. 1440–41, 71 L.Ed.2d 656 (1982).

**26.** This includes the suit brought on behalf of Randall as well as Nash, an employee of Sea Savage, Inc. injured in connection with Randall's death and whose claim was settled prior to trial.

**27.** Letter from plaintiff's counsel attached to this Order and marked Exhibit A.

**28.** *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 417, 89 S.Ct. 1144, 1151–52, 22 L.Ed.2d 371 (1969).

**29.** *Id.*

**30.** *Hartford Accident & Indem. Co. v. Ocean Carrier Shipholding,* 799 F.2d 1093, 1097 (5th Cir.1986).

crew, the lack of any means of communication among the crew, and the inaccessible placement of the life ring buoy. These acts of negligence likewise amount to a breach of the duty of due care owed to Chevron. Accordingly, Chevron is entitled to recover compensation paid on behalf of Randall from Sea Savage, Inc. Sea Savage, Inc., vessel owner, need only reimburse Chevron for the compensation payments that resulted from its negligence, not those that resulted from Chevron's negligence.[31] Accordingly, because I found Sea Savage, Inc.'s negligence caused 75% of plaintiff's damages, Chevron recovers only 75% of the compensation payments made on behalf of Randall.

Accordingly,

IT IS ORDERED that there be judgment in favor of Chevron, U.S.A., Inc. on its claim for indemnification from Sea Savage, Inc., including attorney fees incurred in defense and costs.

IT IS FURTHER ORDERED that plaintiff's judgment be reduced by the funeral expenses and worker's compensation payments paid by Chevron U.S.A., Inc.

IT IS FURTHER ORDERED that Sea Savage, Inc. reimburse Chevron U.S.A., Inc. for 75% of compensation payments made on behalf of Theodore Randall.

IT IS FURTHER ORDERED that the determination of Chevron's award of attorney fees is referred to the United States Magistrate Judge.

---

**31.** *Hartford Accident & Indem.*, 799 F.2d at 1096.