The **DOW CHEMICAL COMPANY,**
Plaintiff-Appellant-Cross
Appellee,

v.

**DIXIE CARRIERS, INC.,** Defendant-
Appellee-Cross Appellant.

No. 71–3413
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 5, 1972.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v. Citizens Casualty Company of New
York et al., 5 Cir., 1970, 431 F.2d 409,
Part I.

Robert Eikel, Houston, Tex., for appellant.

·C. L. Solomon, John K. Meyer, Houston, Tex., for appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge.

Dow Chemical Company brought an action in admiralty against Dixie Carriers for damages to the fender works resulting from three separate collisions between barges under tow by a Dow tug demise chartered to Dixie and a railroad bridge fender system constructed ·by Dow on its barge canal at Freeport, Texas. Both parties appeal from the District Court's $17,055 judgment in favor of Dow, 330 F.Supp. 1304. We affirm.

Dixie's primary argument is that the terms of the time charter generously provide it with absolute immunity against all liability for collision damage, including that resulting from its own negligence.[1] But that sort of extraordinary exemption from legal responsibility "can arise only from the plainly expressed intention of the parties, manifested by language couched in unmistakable terms," not from "the unilateral contention of one party that it meant to impose unlimited liability on the other side." Lanasse v. Travelers Insurance Co., 5 Cir., 1971, 450 F.2d 580, 584, cert. denied Chevron Oil Co., California Company Division v. Royal

---

1. Article VII of the charter reads as follows:

"Dixie shall not be liable for any loss, damage, delay or injury to Dow's operation or Dow's property caused or arising from acts of God, perils of the sea or other waters, or of navigation, *collision*, stranding, grounding, jettison, or wreck; fire or explosion from any cause whatever occurring on board or on shore; fault or barratry, *except negligence of the master, crew or other servants of Dixie;* public enemies, arrest, seizure, or detention by governmental authority or legal process; strikes, riots, lock-outs, stoppage of labor, or labor troubles of Dow or Dixie; unseaworthiness, latent defects in machinery or appurtenances of the vessel, or accidents or derangements to machinery or appurtenances where such failure is not due to the lack of ordinary care in making necessary repairs and maintenance of such machinery or appurtenances; and, without limiting the foregoing in any way, any other cause not due to the fault or neglect of Dixie, its servants, or employees. *Dixie agrees it will indemnify and save harmless Dow from all losses due to negligence of Dixie, its agents, servants or employees, arising through or in connection with the performance of this time charter.* Dow agrees that it will indemnify and save harmless Dixie from all loss due to the negligence of Dow, its agents, servants, or employees, arising through or in connection with the performance of this time charter."
(Emphasis added.)

Insurance Company, 1972, 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 and cases cited therein. Given the equivocal language here, and reading it "against the background of other indicia of the parties' intention,"[2] we must conclude that the District Court's interpretation (that Dixie was exempt from all liability for collision damage *except* that resulting from "negligence of the master, crew or other servants of Dixie") is the only reasonable one.

■ Dixie also challenges the finding that Dow's failure to secure approval from the Secretary of the Army and the Chief of Engineers for construction of the fender system, while technically violative of sections 9 and 10 of the Rivers and Harbors Act, 33 U.S.C.A. §§ 401, 402, did not cause or contribute to any of the collisions. Baldly stated, the contention is that Dow is liable if the fenders "caused" the collisions and that they were a "cause" since the barges collided with them. However, unlike the cases cited by Dixie,[3] there is no proof in the record here that the fender system actually obstructed navigation, that it was inherently hazardous, or that any change in its design or placement would have prevented the collisions. More importantly, as found by the District Court,

Dixie's crew was familiar with the peculiar characteristics of the canal and had navigated through the bridge opening and fender system in both directions on many previous occasions. Clearly the Court concluded that the collisions would not have occurred if Dixie had not been negligent—and that conclusion inescapably involved an assessment of navigation in the face of well-known conditions imposing no extraordinary hazards or difficulties.[4] The record refutes any suggestion that the fender system "caused or contributed to" the collisions simply by being there.[5]

■ Finally, Dixie maintains that many of the District Court's findings regarding the negligence of her crew in operating and maintaining the vessel are erroneous, particularly the refusal to characterize a malfunctioning generator as a "latent defect" within the meaning of the charter terms (see note 1, *supra*). This is merely one more instance for the application of F.R.Civ.P. 52(a) in its seagoing form—the findings are not clearly erroneous and must be affirmed. Lanasse v. Travelers Insurance Co., *supra*; Ohio Barge Line, Inc. v. Oil Transport Co., 5 Cir., 1960, 280 F.2d 448, 1961 A.M.C. 375.

2. United States v. Seckinger, 1970, 397 U.S. 203, 212, n. 17, 90 S.Ct. 880, 886, 25 L.Ed.2d 224, 234, reversing and modifying in part, 5 Cir., 1969, 408 F.2d 146.

3. See, e. g., Atlee v. Northwestern Union Packet Co., 1875, 21 Wall. 389, 88 U.S. 389, 22 L.Ed. 619; Humble Oil and Refining Co. v. Tug Crochet, 5 Cir., 1970, 422 F.2d 602; Seaboard Airline Railroad Co. v. Pan American Petroleum & Transport Co., 5 Cir., 1952, 199 F.2d 761, 1952 A.M.C. 1934, cert. denied, 1953, 345 U.S. 909, 73 S.Ct. 649, 97 L.Ed. 1344; The Fort Fetterman v. South Carolina State Highway Department, 4 Cir., 1958, 261 F.2d 563, on appeal following remand, 4 Cir., 1960, 278 F.2d 921, cert. denied, 364 U.S. 910, 81 S.Ct. 272, 5 L.Ed.2d 225; F. S. Royster Guano Co. v. Outten, 4 Cir., 1920, 266 F. 484; United States v. Norfolk-Berkley Bridge Corp., E.D.Va., 1928, 29 F.2d 115; William B. Patton Towing Co. v. Spiller, Tex.Civ.App., 1969, 440 S.W.2d 869.

4. Significantly, because of Dow's statutory violation the Trial Judge declined to apply the usual presumption of fault against the vessel colliding with a fixed object and imposed on Dow the burden of proving negligence.

5. Dixie's argument confuses negligence with causation. Although it might be argued that Dow's statutory violation rendered it presumptively liable for damages resulting from collision unless it established that the violation could not have caused or contributed to the collision, The Steamship Pennsylvania v. Troop, 1874, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148, that rule cannot "be pressed to such an extreme as to justify a division of damages when the accident was undoubtedly due to the negligence of an offending vessel whose actions could not be anticipated." Webb v. Davis, 4 Cir., 1956, 236 F.2d 90, 93.

Dow's appeal—if it really is an appeal from a judgment,[6] rather than a disagreement with the Trial Court's opinion—results primarily from the determination that its private barge canal constitutes "navigable water of the United States" subject to regulation under the Rivers and Harbors Act. Like the District Court, we conclude that the characterization of the canal as "public" or "private" is irrelevant. McKie v. Diamond Marine Co., 5 Cir., 1953, 204 F.2d 132, 135; Dagger v. U.S.N.S. Sands, S.D.W.Va., 1968, 287 F.Supp. 939, 942; Guilbeau v. Falcon Seaboard Drilling Co., E.D.La., 1963, 215 F.Supp. 909, 911. The evidence relating to Dow's use of the canal for the purpose of transporting substantial quantities of shell, chemicals and finished products to and from its two plants on a daily basis provides more than ample support for the conclusion that the canal was an instrumentality of interstate commerce subject to Congressional regulation under the Act. Leovy v. United States, 1900, 177 U.S. 621, 20 S.Ct. 797, 44 L. Ed. 914.

Dow also maintains that it was entitled to prejudgment interest computed from the date of the collisions, contending that the District Court's discretion to deny such interest must be based upon the existence of peculiar circumstances. Alcoa Steamship Co. v. Charles Ferran & Co., Inc., 5 Cir., 1971, 443 F. 2d 250, 256, cert. denied Underwriters at Lloyds London v. Alcoa Steamship Co., 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 94; American Zinc Co. v. Foster, 5 Cir., 1971, 441 F.2d 1100, cert. denied Ingalls Shipbuilding Division of Litton Systems, Inc. v. American Zinc Co., 404 U. S. 855, 92 S.Ct. 99, 30 L.Ed.2d 95; Sinclair Refining Co. v. SS Green Island, 5 Cir., 1970, 426 F.2d 260. Granting the soundness of this principle as a general rule, we nevertheless believe that the circumstances of this case—including the serious and genuine dispute regarding ultimate liability contested in good faith by Dixie and the relative uncertainty of many of the legal and factual issues to be resolved, added to a mutual fault finding as to one of the collisions —provided the experienced and capable District Judge with an adequate basis for awarding interest only from the date of judgment. Kawasaki Zosensho of Kobe, Japan v. Consulich Societa Triestina Di Navigazione, 5 Cir., 1926, 11 F. 2d 836, 838; Chitty v. M/V Valley Voyager, 5 Cir., 1969, 408 F.2d 1354, 1358. On this record his decision should not be overturned. Dyer v. National Steam Navigation Co., 1886, 118 U.S. 507, 6 S. Ct. 1174, 30 L.Ed. 153.

---

6. The determination did not hurt Dow, since it successfully shouldered a burden it did not otherwise have. See note 4, *supra*.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.