United States Court of Appeals,

Fifth Circuit.

No. 94-30250.

PHILLIPS PETROLEUM COMPANY, Plaintiff-Appellee,

v.

BEST OILFIELD SERVICES, INC., Defendant-Appellant.

April 4, 1995.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY, DUHÉ and PARKER, Circuit Judges.

DUHÉ, Circuit Judge:

Best Oilfield Services, Inc. (Best) appeals the district court's judgment in favor of Phillips Petroleum Company (Phillips). Phillips asserted three liens against Best's workover rig and sought to recover damages for breach of contract and indemnity. The district court held all three liens valid against Best's rig. On appeal, Best maintains that the liens are invalid because of prescription, inadequate description of the leased premises and wells, and confusion. We affirm in part and reverse in part and remand.

BACKGROUND

Best contracted with Phillips to perform workover services on certain oil wells located on property Phillips leases in the Bastian Bay Field, Plaquemines Parish, Louisiana. The contract contained an indemnity provision which required Best to pay all suppliers claims, allow no lien to be placed on the wells, and hold Phillips harmless against any claims or liens. Pursuant to a

1

letter agreement dated October 4, 1991 that extended the contract, Best performed workover services on the Fasterling B No. 1 and Fasterling No. 3 wells and converted the LL & E Fee 9 No. 10 well into a saltwater disposal well.  After Best completed its work, Phillips paid Best in full.

Best, however, did not pay three of its suppliers.  Best owed $32,830 to Diamond "B" Marine Services, Inc. (Diamond), which supplied crew boats to Best.  It owed $63,251.12 to T.L.C. Marine Services, Inc. (TLC), which provided towing and barging services to Best.  Lastly, it owed $21,239.59 to Gulf Seafood Company of Empire, Inc. (Gulf), which furnished fuel to Best.  On April 9, 1992, Phillips was notified that Diamond had recorded a lien in Plaquemines Parish under the Louisiana Oil, Gas, and Water Wells Lien Act, La.Rev.Stat.Ann. §§ 9:4861-:4867 (the "Act").[1]  Phillips paid the suppliers in full in exchange for an assignment of their

---

[1]The Act provides a privilege for contracted services:

> Any person who does any trucking, towing or barging, or who makes any repairs, or furnishes any fuel, drilling rigs, standard rigs, machinery, equipment, material, or supplies for or in connection with the drilling of any well or wells in search of oil, gas or water, or for or in connection with the operation of any oil, gas or water well or wells ... has a privilege on all oil or gas produced from the well or wells and the proceeds thereof inuring to the working interest therein and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment ... for the amount due for such [services] in principal and interest, and for the cost of preparing and recording the privilege as well as ten percent attorney's fees....

La.Rev.Stat.Ann. § 4861.B.

2

rights against Best. On June 8, 1992, Phillips recorded the TLC and Gulf liens in Plaquemines Parish. On July 9, 1992, Phillips commenced this action against Best seeking $117,320.71 plus costs and ten percent attorney's fees.

At trial, Best did not contest liability on the debts. Rather, it asserted three defenses to the applicability of the liens to its rig. First, Best contended that the TLC and Gulf liens were not recorded within the required 180 days and thus were prescribed under La.Rev.Stat.Ann. § 9:4862.A.[2] Second, Best contended that the descriptions in the lien affidavits filed in the parish records were inaccurate and legally inadequate under *id.* § 9:4862.C. Third, it contended that the liens were extinguished by confusion because Phillips asserted privileges against property that it leases.

After a bench trial on briefs and stipulated facts, the district court granted judgment for Phillips. The court rejected each of Best's defenses. On prescription, the court found that TLC last provided services to Best on January 8, 1992, and that Gulf had last provided fuel to Best on January 3, 1992. Consequently, the court held that Phillips had recorded the liens before the 180 day periods had run. On description, the court held that the

---

[2]Before 1986, a person could assert a privilege under the Act even if he had not recorded within 180 days so long as he filed suit within a year. *See Louisiana Materials Co. v. Atlantic Richfield Co.,* 493 So.2d 1141, 1147-48 (La.1986). Now, a person must record in accordance with § 9:4862 in order to preserve his privilege. *See* La.Rev.Stat.Ann. § 9:4865; *St. Mary Iron Works v. McMoran Exploration Co.,* 809 F.2d 1130, 1135 n. 5 (5th Cir.1987).

descriptions on file were sufficient to put third parties on notice as to the property affected by the liens. Finally, on confusion, the court held that confusion was inapplicable because Phillips did not acquire full ownership of both sides of the lien obligations. Best raises these same three arguments on appeal.

## DISCUSSION

We review a district court's findings of fact from a bench trial for clear error. Fed.R.Civ.P. 52(a); *Verrett v. McDonough Marine Serv.,* 705 F.2d 1437, 1441 (5th Cir.1983). We review the court's legal conclusions de novo.[3]

*I. Prescription*

Best contends that the district court's findings are clearly erroneous because TLC and Gulf provided no services or fuel to Best within the confines of the Bastian Bay Field after December 7, 1991. Best contends that the next day should count as the first day of the 180 day periods. Starting on December 8, 1991, the last day to record would have been June 4, 1992, making Phillips's

---

[3]Because the Louisiana Legislature now requires a person who asserts a privilege under the Act to record it in order to preserve it, we have reservations whether such a privilege applies to movable property removed from the lease before the privilege is recorded. *See* La. Const. art. 19, § 19 (1921) (allowing privileges on movable property to exist without recordation except when prescribed by law), *continued as statutory authority by* La. Const. art. 14, § 16; La.Rev.Stat.Ann. § 9:4861.2 (allowing seizure of movable property removed from the lease only if the property was removed after the lien attached); *Ogden Oil Co. v. Servco,* 611 F.Supp. 572, 575 (M.D.La.1985) (noting in pre-1986 case that a privilege asserted under the Act attaches to movable property without recordation). Nevertheless, because the issue is not before us, we will not address it.

recordation on June 8 too late.[4]

At oral argument, Phillips conceded that the district court erred in finding that the last day of services occurred in January 1992. As an alternative argument, Phillips seeks to construe the "in connection with" language in § 9:4861.B to include services up through December 10, 1991. If the first day to count is December 11, 1991, then Phillips's recordation is timely.[5]

*A. The TLC Lien*

TLC provided towing and barging services to Best. TLC towed Best's rig from the Field to Empire, Louisiana, where it arrived on December 7, 1991. A barge, the SUARD VIII, was towed back to

---

[4]The Act's prescription statute provides:

> A. (1) To preserve the privilege granted by R.S. 9:4861, a notice of such claim or privilege, setting forth the nature and amount thereof, shall be filed for record and inscribed in the mortgage records of the parish where the property is located:
>
> ....
>
> (b) Within one hundred eighty days after the last day of the doing, making or performing of such trucking, towing, barging, or repairing, in the case of claimants doing, making, or performing such services; and
>
> (c) In the case of furnishers of fuel, ... within one hundred eighty days from the last date of the delivery of such fuel ... to the well or wells.

La.Rev.Stat.Ann. § 9:4862.A.

[5]Actually, day 180 would be June 7, 1992 because of the leap year. Nevertheless, June 7 was a Sunday; in Louisiana, as under the Federal Rules of Civil Procedure, the 180 day period carries over to Monday, June 8. *See* La.Civ.Code Ann. art. 3454 (West 1994); La.Rev.Stat.Ann. § 1:55.A(1) (West 1987); *Lagniappe Constr. Co. v. Montecino,* 525 So.2d 693, 694 (La.Ct.App. 1st Cir.1988); *cf.* Fed.R.Civ.P. 6(a).

5

Lockport, Louisiana, where it arrived on the same day. When it arrived in Lockport, however, the barge was still loaded with Best's equipment. The equipment had to be unloaded and the barge cleaned. The cleanup operation concluded on December 10, 1991, when Best redelivered the SUARD VIII to TLC. The question is whether the unloading and cleanup of the barge delays the start of the 180 day period until December 11.

Because TLC provided towing and barging services, we look to § 9:4862.A(1)(b). The statute describes the last day before the 180 day period begins as the last day such services were performed. The word "such" refers to § 9:4861.B, which describes services rendered "in connection with" the drilling or operation of any oil well. Best would have us limit "in connection with" to services rendered in the Bastian Bay Field. Phillips promotes a broader construction that would cover services between the Field and Best's base in Lockport where it redelivered the barge.

Best asks us to construe the statute stricti juris. When in doubt, Louisiana courts construe privileges strictly. *Amoco Prod. Co. v. Horwell Energy,* 969 F.2d 146, 148 (5th Cir.1992). The reason for strict construction is that privileges often derogate the rights of innocent parties. *Id.* Nevertheless, courts have construed § 9:4861.B in a liberal and nontechnical way because they consider its "in connection with" language to be "broad" and "all encompassing." *See Ogden Oil Co. v. Servco,* 611 F.Supp. 572, 576 (M.D.La.1985); *Ogden Oil Co. v. Venture Oil Corp.,* 490 So.2d 725, 730 (La.Ct.App. 3d Cir.), *writ denied,* 494 So.2d 328 (La.1986).

6

Consequently, we apply a reasonable construction to § 9:4861.B, but if we are left in doubt, we will construe it stricti juris. *See Continental Casualty Co. v. Associated Pipe & Supply Co.,* 310 F.Supp. 1207, 1217-18 (E.D.La.1969) (applying stricti juris construction to Act only when its terms are not clear and unambiguous), *aff'd in part and vacated in part,* 447 F.2d 1041 (5th Cir.1971).

The question is whether the cleaning and redelivery of a barge used to provide services to oil wells is performed in connection with the operation of the oil wells. We believe that it is. "Connection" means a logical interrelationship, and it is synonymous with "nexus" or "link." *United States v. Condren,* 18 F.3d 1190, 1195, 1196 n. 18 (5th Cir.) (citing Webster's Ninth New Collegiate Dictionary 278, 797 (1990)), *cert. denied,* --- U.S. ----, 115 S.Ct. 161, 130 L.Ed.2d 99 (1994). A connection exists between the cleaning and redelivery of the SUARD VIII and the operation of the oil wells because Best used the barge to perform its services on the wells. The barge carried Best's equipment. The equipment had to be unloaded and the barge cleaned before it could be redelivered.

Best contends that our construction of "in connection with" makes § 9:4861.B overly broad. The example it offers is that if the barge had been towed from the well site around the world, under our construction that towing would be covered by the statute. Rather, Best would limit "in connection with" to services offered within the oilfield. Such a construction, however, is technical

7

and not supported by the language of the statute. "Connection" does not suggest any geographical boundary; rather, a connection exists if there is a logical interrelationship or a link with the drilling or operation of the well. We determine that the cleaning of the barge and its immediate redelivery are services performed "in connection with" the operation of the oil wells. We conclude that the last day TLC performed services in connection with Best's reworking of the wells was December 10, 1991. Because Phillips recorded the TLC lien on June 8, 1992, the TLC lien did not prescribe.

*B. Gulf Lien*

Gulf furnished fuel to Best's rig during its work in the Bastian Bay Field. Its last delivery to Best's rig in the Field occurred on December 6, 1991. Still, Phillips urges its same argument that we construe the Act broadly. Phillips argues that Best consumed the fuel provided by Gulf by having the SUARD VIII towed back to Lockport. Since Best used the fuel until December 10, Phillips contends that the Gulf lien has not prescribed.

Section 9:4862.A(1)(c) applies to furnishers of fuel. The 180 day period starts to run after the last day such fuel is delivered "to the well or wells." La.Rev.Stat.Ann. § 9:4862.A(1)(c). Under this subsection, the description of the last day of services is specific; the last day is the last day fuel is delivered to the leased property. Gulf last delivered fuel to the wells in the Bastian Bay Field on December 6, 1991. Consequently, the Gulf lien prescribed before Phillips recorded it.

Section 9:4862.B does not save the Gulf lien from prescription.[6] That Section provides a continuing operations exception to the beginning of the 180 day period. Patrick H. Martin & J. Lanier Yeates, *Louisiana and Texas Oil & Gas Law: An Overview of the Differences,* 52 La.L.Rev. 769, 848 (1992). The 180 day period does not begin to run if the person entitled to the privilege continues to perform services in the same oil field for the same contractor. Because Gulf did not furnish fuel to Best in the Bastian Bay Field after December 6, 1991, the continuing operations exception does not apply.

*II. Description*

Best's next argument addresses the sufficiency of the descriptions in the lien affidavits. "The notice of such claim or privilege shall contain a description of the leased property of such nature as to make the leased property reasonably subject to identification." La.Rev.Stat.Ann. § 9:4862.C. The question is whether the descriptions are sufficient to reasonably identify for third persons the leased property affected. *Dooley Tackaberry,*

---

[6]That Section reads as follows:

> The one hundred eighty day period shall not commence to run, and shall be suspended, so long as the person entitled to the privilege shall continue to furnish labor, services, fuel, materials, and supplies, or any of those things in the same oil field in which the well or wells subject to the privilege are located, to the same owner, operator, producer, or driller of the well or wells, and whether the labor, services, fuel, materials, and supplies, or any of those things are furnished to the well or wells subject to such privilege or to other well or wells.

La.Rev.Stat.Ann. § 9:4862.B.

9

*Inc. v. Freeport McMoran Oil and Gas Co.,* 802 F.Supp. 1438, 1439 (E.D.La.1992).  The district court found that the lease descriptions satisfied the statute because they were sufficient to satisfy the third party standard.[7]

Best initially argues that the descriptions are faulty in two ways.  First, Best points out that Diamond's description of the LL & E well actually describes another well.  Second, Best notes that the Fasterling No. 3 well is located in Range 28 East, not in Range 29 East as both affidavits allege.  Best contends that the faults in the descriptions make them misleading.  Best, however, alleges no faults with the description of the Fasterling B No. 1 well.  The Best rig performed work at all three wells.  Assuming *arguendo* that the descriptions of the LL & E well and the Fasterling No. 3 well are misleading, we determine that the affidavit descriptions are

---

[7]The property description on the Diamond affidavits reads:

> LL & E FEE # 10, Well No. 030082, located in Section 44, Township 20 South, Range 28 East, and on the Fasterling B # 1, Well No. 073712, located in Section 47, township 20 South, Range 29 East and on the Fasterling B # 3, located in Section 47, Township 20 South, Range 29 East all located in the Bastian Bay Field, Plaquemines Parish, Louisiana.

1 Record 291.  The affidavit filed by Phillips for the TLC lien describes the leased property as follows:

> LL & E FEE 9 No. 10, located in Section 44, Township 20 South, Range 28 East, on the Fasterling B No. 1, located in section 47, Township 20 South, Range 29 East, and on the Fasterling B No. 3, located in Section 47, Township 20 South, Range 29 East which wells are owned by Phillips Petroleum Company and located in Bastian Bay, Plaquemines Parish.

1 Record 273.

not misleading because they correctly describe the Fasterling B No. 1 well.

Best then argues that the descriptions of the wells by section are not legally adequate. It reasons that the section information in the affidavits is insufficient to identify the relevant well because more than one well occupy each range description. We disagree. Although Section 47, Township 20 South, Ranges 28 and 29 East contain about thirty wells total, each well is located on a particular lease and has a number. In addition to providing the section information, the affidavit descriptions provide the lease name and the well number. The lease's name and the well's number given within a range would allow a third party to identify the well affected by the privilege. We conclude that the descriptions within the Diamond and TLC affidavits are legally sufficient to provide a third party with reasonable notice of the leased property affected by the lien.

*III. Confusion*

Best's final argument is that the privileges were extinguished by confusion when they were assigned to Phillips. A privilege becomes extinct when the creditor acquires the thing subject to the privilege. La.Civ.Code Ann. art. 3277(2) (West 1994). Because the privileges that Phillips acquired act against its leased property, Best contends that the privileges were extinguished by confusion. The district court rejected Best's argument because Phillips did not own both sides of the lien obligations. Best argues that a privilege affecting both immovable

11

and movable property extinguishes the obligation by confusion when the creditor acquires the immovable property.  We disagree.

Article 3277(2) refers to the thing subject to the privilege, which in this case means both movable and immovable property, the leases, wells and the workover rig and related equipment. Nevertheless, confusion is the theory on which Article 3277 is based.  John E. Peltier, Jr., Comment, *Extinguishment of Obligations by Confusion,* 36 Tul.L.Rev. 521, 534 (1962). Obligations are extinguished by confusion "[w]hen the qualities of obligee and obligor are united in the same person."  La.Civ.Code Ann. art. 1903 (West 1987).  Best is obligated to pay for the subcontractor services.  Its rig is subject to the privileges. Phillips does not own Best's rig.  Because the obligor's property giving rise to the privileges is movable property and not land, the cases cited by Best are distinguishable. *See Ranson v. Voiron,* 176 La. 718, 146 So. 681, 682 (1933); *Griffin v. His Creditors,* 6 Rob. 216, 223-24 (La.1843).  Because Phillips does not own Best's rig, the privileges are not extinguished by confusion.

## CONCLUSION

For the foregoing reasons, we reverse the district court's judgment as to the application of the Gulf lien and affirm the judgment as to the application of the TLC and Diamond liens.

AFFIRMED IN PART, REVERSED IN PART and REMANDED.