UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-30829
_____

AMERICAN RIVER TRANS COMPANY, ET AL.,

Plaintiffs,

AMERICAN RIVER TRANS COMPANY; TULANE FLEETING; NEW ORLEANS
SHIPYARD INC.; ARCHER DANIELS MIDLAND COMPANY;

Plaintiffs-Appellees,

versus

KAVO KALIAKRA SS, her engines, tackle, appurtenances, etc., in
rem, ET AL.,

Defendants,

KAVO KALIAKRA SS, her engines, tackle, appurtenances, etc., in
rem; UNITED KINGDOM MUTUAL STEAMSHIP ASSURANCE ASSOCIATION
(Bermuda) LTD., in personam,

Defendants-Appellants,

and

AROSITA SHIPPING COMPANY, LTD.,

Claimant-Defendant-Appellant

_____

AROSITA SHIPPING COMPANY, LTD, as owner of the M/V Kavo
Kaliakra; GROMAR SHIPPING COMPANY, LTD, as owners of the M/V
Kavo Kaliakra; GOURDOMICHALIS MARITIME S A, as owners of the
M/V Kavo Kaliakra,

Petitioners-Appellants,

versus

COMPASS CONDO CORP, ET AL.,

                              Claimants,

COMPASS CONDO CORP; NEW ORLEANS SHIPYARD INC; ARCHER DANIELS
MIDLAND COMPANY; TULANE FLEETING, INC.,

                              Claimants-Appellees.

_____

Appeal from the United States District Court for the
Eastern District of Louisiana
_____
July 22, 1998

Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

In this appeal, we consider whether the Pennsylvania Rule compels a finding that the presence in navigable water of barges that lacked a permit caused a carrier to allide with the barges. The district court entered judgment in favor of the barge owners, holding that the mere presence of the barges was not the cause of the allision.  We affirm.


                              I.

On March 30, 1992, the *M/V Kavo Kaliakra*, a bulk carrier measuring approximately 825 feet and weighing approximately 65,000 tons, fully laden with a cargo of corn, allided with barges fleeted at the Tulane Fleeting Facility on the Mississippi River near Waggaman, Louisiana.

For approximately a year and a half prior to the allision, American River Transportation Co., Archer Daniels Midland Co., Tulane Fleeting, Inc., New Orleans Shipyard, Inc., and Compass Condo Corp. (collectively "ARTCO") had been running a barge-washing operation at the Tulane Fleeting Facility. The facility consisted of a permanently moored floating barge dock, measuring approximately 240 feet long and 50 feet wide, which served as a station where ARTCO temporarily tied inland river hopper barges for cleaning and repairs.

On March 30, 1992, two fleets of barges were moored at the facility: an upriver fleet consisting of twenty barges moored in two tiers of ten, and a downriver fleet consisting of eight barges moored in two tiers of four. The *M/V Kavo Kaliakra* was headed downriver at 11-12 knots when it lost all power and steering. The vessel drifted for about two miles, slowing to a speed of approximately 2-3 knots before alliding with the outermost barge of the upriver fleet of barges at the Tulane facility, scraping alongside it at an angle of approximately 45 degrees. The force of the impact caused the permanently moored barge to move about 20 feet toward the shore, deforming its spuds, flooding various compartments, and twisting and partially sinking its shoreside access walkway. The *M/V Kavo Kaliakra* continued about 300 feet downriver and struck one of the barges in the downriver fleet as well.

ARTCO filed suit against Arosita Shipping Co., Ltd., Gromer Shipping Co., Ltd., Gourdomichalois Maritime S.A., owners and/or operators of the *M/V Kavo Kaliakra*, their limited liability insurer, United Kingdom Mutual Steamship Assurance Association (Bermuda) Ltd., and the *M/V Kavo Kaliakra* (collectively "Arosita"), seeking compensation for property damage. Arosita filed an action seeking exoneration or limitation of liability under 46 U.S.C. § 183.

The two actions were consolidated and tried to the bench. The district court rejected Arosita's claim that the allision was caused by ARTCO's having had barges moored in violation of the Rivers and Harbors Act, 33 U.S.C. § 403. The district court also found that Arosita failed to prove that ARTCO's permits were insufficient.[1] Arosita timely filed notice of appeal.[2]

II.

---

[1] Because we affirm based on the district court's causation analysis, we assume for the purposes of this decision that ARTCO's permits were insufficient.

[2] American River Transportation Co., Archer Daniels Midland Company, Tulane Fleeting, Inc., and New Orleans Shipyard, Inc., are each owners and/or operators of the Tulane Fleeting Facility, while Compass Condo Corp. is the employer of individuals who were working on barges fleeted at the facility. Arosita concedes that Compass Condo Corporation is not responsible for the alleged statutory violation. Compass, however, submitted the appellee brief jointly with the other ARTCO entities.

4

This court reviews the district court's findings of fact for clear error, *see* Fed. R. Civ. P. 52(a); *Phillips Petroleum Co. v. Best Oilfield Servs.*, 48 F.3d 913, 915 (5th Cir. 1995), and findings of law *de novo, see Phillips Petroleum Co.*, 48 F.3d at 915. We note at the outset that Arosita contends that this court should approach the district court's findings more skeptically than we otherwise would because many of the district court's findings of fact and conclusions of law were drawn directly from those proposed by ARTCO, citing *Falcon Construction Co. v. Economy Forms Corp.*, 805 F.2d 1229, 1232 (5th Cir. 1986), and *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir. 1980). Nevertheless, Arosita concedes that the standard remains clear error. We reject Arosita's suggestion that we should afford the district court's factual findings less deference than usual. *See Kaspar Wire Works, Inc. v. Leco Engineering & Mach.*, 575 F.2d 530, 543 (5th Cir. 1978) (concluding that the district court's findings reflected a careful review despite the fact that it adopted one party's language verbatim). The district court's findings of fact, though they borrow from the parties' post-trial briefs, manifest no infidelity to the district court's obligations.

## III.

In challenging the district court's determination that the presence of the barges without a permit did not cause the allision,

Arosita relies on the Pennsylvania Rule, a presumption in admiralty law that a statutory violation by a party to a collision is a cause of the damage unless it is established that the violation could not have caused or contributed to the collision. *See The Steamship Pennsylvania v. Troop*, 86 U.S. 125 (1873). Arosita contends that the barges at the Tulane Fleeting Facility were moored in violation of the Rivers and Harbors Act, 33 U.S.C. § 403, and that their unpermitted presence was a cause of the allision. Arosita stresses that the Rivers and Harbors Act prohibits any obstruction of the navigable capacity of United States waters absent affirmative authorization from the Army Corps of Engineers.[3] Arosita also

---

[3]     The relevant portions of the Rivers and Harbors Act provide:

> The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or to commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water if the United States . . . except on plans recommended by the Chief of engineers and authorized by the secretary of the Army; and it shall not be lawful . . . in any manner to alter or modify the . . . capacity of . . . the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the secretary of the army prior to beginning the same.

33 U.S.C. § 403.

> It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft.

33 U.S.C. § 409.

6

points to testimony of several witnesses that the Tulane Fleeting Facility obstructed the navigability of the river, which would otherwise have been navigable bank to bank in that area, and that no allision would have resulted from the ship's loss of power if there had been fewer barges moored at the facility. The district court, however, concluded that ARTCO's barges did not cause the accident, explaining:

> The Court finds that ARTCO in no way caused this allision. The Court finds it unnecessary to decide what types of permits ARTCO had or was required to have. The ship intended to pass 1000 feet away from ARTCO's barges. ARTCO's stationary barges, did not, in fact, obstruct the navigable channel, thus rebutting any presumption of fault due to the purported violation by ARTCO of any statutory rules as alleged by Arosita.

We agree with the district court's conclusion with respect to causation.

This court has stressed that the Pennsylvania Rule is a rule regarding the burden of proof, not a rule of ultimate liability. *See Pennzoil Producing Co. v. Offshore Exp., Inc.*, 943 F.2d 1465, 1472 (5th Cir. 1991). As we have explained, the Supreme Court in *The Pennsylviania* "did not intend to establish a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the imagination have had any causal relation to the collision, no matter how speculative, improbable or remote." *Compania de Maderas de Caibarien, S.A. v. Queenston Heights*, 220 F.2d 120, 122-23 (5th Cir. 1955).

7

The reasoning of this court in *Dow Chemical Co. v. Dixie Carriers, Inc.*, 463 F.2d 120 (5th Cir. 1972), applies in this case. In *Dow Chemical*, a tugboat owned by Dixie Carriers had, on three occasions, struck a stationary railroad bridge fender system constructed by Dow. Stressing that Dixie was aware of the location of the fender system, this Court found that Dow Chemical's failure to secure approval from the Army Corps of Engineers for the system, although technically a violation of the Rivers and Harbors Act, did not cause the allisions. The court explained: "The record refutes any suggestion that the fender system caused or contributed to the collisions *simply by being there*." *Id.* at 122 (emphasis added; internal quotation marks omitted). Similarly, the unpermitted barges moored at ARTCO's fleeting facility did not cause the allision simply because they were there.

To be sure, the presence of the barges in this case was a but-for cause of the allision, just as the presence of the fender system was a but-for cause of the allisions in *Dow Chemical*. But in admiralty, the "fault which produces liability must be a contributory and proximate cause of the collision, and not merely fault in the abstract." *Inter-Cities Navig. Corp. v. United States*, 608 F.2d 1079, 1081 (5th Cir. 1979). To give rise to liability, a culpable act or omission must have been "a substantial and material factor in causing the collision." *Id.*

8

In this case, the presence of the barges was not a substantial and material factor in causing the accident. The district court found that the fleeting facilities and barges were not an obstruction to navigation. That finding was not clearly erroneous. The captain of the *M/V Kavo Kaliakra* acknowledged that the Mississippi River is 2400 feet wide where ARTCO's fleeting facility was located and that had he stayed on course (down the middle of the river) he would have passed 1000 feet away from the barges. That the river would have been navigable bank to bank in the absence of the fleeting facility does not compel a finding that the fleeting facility obstructed the navigable channel.

Moreover, we noted in *Dow Chemical* that the Pennsylvania Rule "cannot 'be pressed to such an extreme as to justify a division of damages when the accident was undoubtably due to the negligence of an offending vessel whose actions could not be anticipated.'" *Dow Chemical*, 463 F.2d at 122 at n.5 (quoting *Webb v. Davis*, 236 F.2d 90, 93 (5th Cir. 1956)). As in *Dow*, the ship's crew in this case was aware of the location of the stationary object. Arosita does not challenge the district court's factual findings that it was at fault for the *M/V Kavo Kaliakra*'s having lost power on the day in question and for not slowing the ship more quickly after the loss of power prior to the allision.

Arosita argues that *Dow* is distinguishable from the case at hand because here a different design or placement of the structures

9

would have avoided the allision.  Specifically, Arosita points to testimony that, if one less barge had been moored at the fleeting facility, the *M/V Kavo Kaliakra* would not have allided with it.  At bottom, however, this argument is no more than a restatement of the position that the unpermitted barges caused the accident by "being there."

For the foregoing reasons, we affirm the judgment of the district court.