United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-30054

TUG BARBARA E. BOUCHARD CORP. and B NO. 235 CORP.,

Plaintiffs--Third-Party Defendants--Counter
Defendants--Appellants--Cross-Appellees,

versus

AMAZONIA MV, her engines, tackle, apparel, etc., in rem,

Defendant--Appellee--Cross-Appellant,

and

A. T. SHIPPING CO. LTD.; STANSHIPS INC.;
STANDARD SHIPPING, INC.; and ABC INSURANCE CO.,

Defendants--Third-Party Plaintiffs--Counter
Plaintiffs--Appellees--Cross-Appellants,

and

STANDARD SHIPPING LTD., in personam,

Cross-Appellant.

Appeals from the United States District Court
For the Eastern District of Louisiana

Before BARKSDALE, GARZA, and DeMOSS, Circuit Judges.

PER CURIAM[*]:

This appeal concerns a maritime tort suit filed by Plaintiffs-

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-Third-Party Defendants--Counter Defendants--Appellants--Cross-Appellees Tug Barbara E. Bouchard Corp. and B No. 35 Corp. (together, "Bouchard") against Defendants--Appellees--Cross-Appellants AMAZONIA MV; A. T. Shipping Co. Ltd; Stanships Inc., Standard Shipping, Inc.; and ABC Insurance Co. (together, "Stanships"). Bouchard appeals the district court's final judgment in favor of Stanships after a bench trial.[1]  For the following reasons, we AFFIRM the district court.

## BACKGROUND

On the morning of October 11, 2001, Charles Culpepper ("Culpepper"), captain of the tug BARBARA E. BOUCHARD, was en route to Pascagoula, Mississippi, along the Mississippi River but decided to anchor the BARBARA E. BOUCHARD and attached BARGE 235 (together, the "BOUCHARD flotilla") at the Boothville anchorage due to bad weather.  The BOUCHARD flotilla was approximately 550 feet long. While anchored, she initially faced upriver; however, the wind and tide caused the BOUCHARD flotilla to swing toward the concrete river bank.  She was affected by the wind because she was not loaded with cargo.  Culpepper was concerned about possible damage from the bank, so that evening between 5:00 and 6:00 p.m. he reanchored the BOUCHARD flotilla about 100 to 150 feet further toward the center of the river.  Culpepper put out about four shots

---

[1]We agree with Stanships that its cross-appeal regarding a Rule 15 amendment to add a party is moot because Bouchard did not appeal the district court's ruling or brief any argument pertaining to the proper parties.

of anchor cable, equivalent to about 360 feet.  Culpepper stated the BOUCHARD flotilla's anchor was still within the Boothville anchorage.  That night the winds got up to 50 miles per hour, and there were rain squalls.  However, the anchor did not drag.

On October 12, 2001, Culpepper remained at the Boothville anchorage due to the bad weather.  The wind was still causing the stern of the BOUCHARD flotilla to swing toward the east bank of the river.  In this perpendicular position, there was approximately a quarter of a mile of river between the BOUCHARD flotilla and the east bank.  Other vessels were able to pass safely between the BOUCHARD flotilla and the east bank.  Several of those passing vessels contacted the BOUCHARD flotilla about her position in the center of the river.

On October 13, 2001, the loaded AMAZONIA, piloted by Captain Jack Grubbs ("Grubbs"), was proceeding upriver at full maneuvering speed.  The AMAZONIA's gyrocompass was not functioning, and the Coast Guard had granted the vessel permission to proceed during daylight hours only.  The AMAZONIA was required to anchor by sundown, approximately 6:32 p.m.

Lower Plaquemines Parish had been under a tornado watch all day, and there were severe weather warnings in the vicinity of Terrebonne Bay.  When Culpepper came on duty at 5:00 p.m., there was a severe storm warning for southeast Louisiana.  By this time, the Boothville anchorage was filled with a number of other tugs and barges.  Unlike the BOUCHARD flotilla, these vessels were loaded

3

with cargo.  About 6:00 p.m. a squall approached the area.  When Culpepper noticed the clouds, he had the engineer start the engines in case he had to maneuver the BOUCHARD flotilla in the wind.

About this time, Culpepper first visually observed the AMAZONIA, approximately a mile below the BOUCHARD flotilla.  Culpepper was aware that the AMAZONIA was traveling northbound because he had heard Grubbs on the radio.  The BOUCHARD flotilla's bow was still pointed toward the west bank, and her stern was pointed toward the east bank.  However, within minutes the squall approached and the winds began hitting the BOUCHARD flotilla like a "freight train," causing the bow to swing toward the center of the river.  The BOUCHARD flotilla began to drag anchor and rotate in a clockwise manner across the river toward the east bank.  This occurred at the same time the AMAZONIA was passing between the BOUCHARD flotilla and the east bank of the river.

Culpepper tried to use his engines to back away from the approaching AMAZONIA.  He blew the danger signal and attempted to contact the AMAZONIA by radio.  The AMAZONIA steered hard right to avoid collision.  However, Culpepper lost control and the starboard bow of the BOUCHARD flotilla collided with the port bow of the AMAZONIA at approximately 6:05 p.m.  After the two vessels collided, they were parallel to each other in the river.  The AMAZONIA continued to travel northbound and eventually grounded on the east bank side of the river.

Bouchard filed a complaint under the general maritime laws

4

against Stanships for damages sustained when the BOUCHARD flotilla and the AMAZONIA collided on the Mississippi River. Stanships counterclaimed for damages sustained by the AMAZONIA and also filed a third-party complaint against Bouchard's insurer, Continental Insurance Co. A bench trial was conducted, and the district court granted Stanships's motion for judgment as a matter of law. The district court found Bouchard solely at fault for the collision and granted Stanships's claims against Bouchard. Bouchard timely appealed.

**DISCUSSION**

**Whether the district court erred by applying a strict liability theory rather than a negligence standard in finding the BOUCHARD flotilla responsible for the collision.**

Bouchard argues on appeal that the district court erred as a matter of law in applying a theory of strict liability rather than a negligence standard in finding the BOUCHARD flotilla responsible for the collision. Bouchard maintains the court held it strictly liable because the court found it had violated the anchorage regulations set forth in 33 C.F.R. § 110.195. Stanships contends the district court did not impose strict liability and instead imposed the correct standard of reasonable care in finding Bouchard solely responsible for the collision.

While Bouchard is correct that the district court determined that the BOUCHARD flotilla had violated several provisions of § 110.195, the court also noted Culpepper's testimony that the

5

BOUCHARD flotilla was positioned perpendicular to the west bank and was being blown by the wind, before and after the squall. The court pointed to Culpepper's lack of control and the fact he knew the AMAZONIA was approaching to pass while the BOUCHARD flotilla was being blown toward the center of the river into oncoming traffic. The court determined Culpepper failed to take corrective action and exercise due diligence despite the BOUCHARD flotilla's being blown outside the anchorage limits before the squall. The court found "the force of the wind, combined with the perpendicular anchorage, length and type of anchor line, and lack of control and reasonable monitoring of the anchorage" caused the BOUCHARD flotilla to drag anchor into the path of the AMAZONIA.

Thus, the record does not support Bouchard's argument that the court applied a theory of strict liability instead of a theory of negligence. Moreover, we conclude the court's factual findings on Culpepper's lack of due diligence and his negligence are not clearly erroneous. *See* **Avondale Indus., Inc. v. Int'l Marine Carriers, Inc.**, 15 F.3d 489, 492 (5th Cir. 1994) (treating negligence questions as factual issues in admiralty actions).

**Whether the district court erred in not considering the BOUCHARD flotilla *in extremis*.**

Bouchard next argues the district court erred as a matter of law in not considering Culpepper's actions in light of the *in extremis* doctrine. *See* **Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.**, 866 F.2d 752, 771 (5th Cir. 1989) (explaining that

6

the *in extremis* doctrine only applies to a vessel which "without prior negligence" encounters "destructive natural forces"). Stanships responds that the district court was correct in finding that all of Culpepper's negligent actions occurred prior to the start of the squall, such that the *in extremis* doctrine was not applicable here.

Here, the district court found negligence on the part of Culpepper because he did not take proper corrective action to reposition the BOUCHARD flotilla before the squall ever started. Because the BOUCHARD flotilla was found to be negligent prior to the storm, we conclude the *in extremis* doctrine was inapplicable.

**Whether the district court's findings pertaining to proximate cause were clearly erroneous.**

Bouchard also argues the district court's findings pertaining to proximate cause are clearly erroneous. Bouchard contends the proximate cause of the collision was neither the location of the BOUCHARD flotilla nor the storm, but instead was the AMAZONIA's decision to proceed at full speed in a squall in order to reach anchorage by nightfall (which she was forced to do because of her unseaworthiness). Bouchard relies on ***Deutsche Shell Tanker Gessellschaft mbH v. Placid Refining Co.***, 993 F.2d 466, 468, 474 (5th Cir. 1993), where this Court affirmed that a vessel's failure to maintain her radar in seaworthy condition was the proximate cause of her grounding.

Stanships argues this case is factually distinguishable from

7

*Deutsche Shell*.    Here,  the  AMAZONIA's  radar  was  entirely

functional.  While the AMAZONIA did have an inoperable gyrocompass

on the day of the collision, she had permission from the Coast

Guard to operate during daylight hours.  The collision occurred

during daylight hours, and there was testimony the collision was

not due to the inoperable gyrocompass.  Stanships contends the

district court correctly determined that there was no credible

evidence that the AMAZONIA's speed or other actions played any role

in causing the collision.

We  agree  with  Stanships  that  *Deutsche Shell*  is  easily

distinguishable from this case.  We thus conclude the court's

findings  on  proximate  cause  are  not  clearly  erroneous.  *See*

*Avondale Indus.*, 15 F.3d at 492 (treating causation questions as

factual issues in admiralty actions).

**Whether the district court erred by not applying the Pennsylvania
Rule or the moving-vessel doctrine.**

Finally, Bouchard argues the AMAZONIA violated several Coast

Guard Inland Rules pertaining to navigation.  Because of these

infractions, Bouchard contends the district court erred by not

applying  the  Pennsylvania  Rule  of  contributory  fault  to  the

AMAZONIA.  *See* **THE PENNSYLVANIA**, 86 U.S. 125, 135-38 (1873)

(outlining that at least contributory fault is reasonably presumed

when a ship was violating collision regulations or rules of the

road); *see also* **Am. River Trans. Co. v. KAVO KALIAKRA SS**, 148 F.3d

446, 450 (5th Cir. 1998) ("To give rise to liability [under the

8

Pennsylvania Rule], a culpable act or omission must have been a substantial and material factor in causing the collision.") (citation and internal quotation marks omitted). Bouchard also argues the court erred in not applying the moving vessel presumption of fault to the AMAZONIA. *See **Am. Petrofina Pipeline Co. v. M/V SHOKO MARU***, 837 F.2d 1324, 1326 (5th Cir. 1988) (noting the longstanding presumption of negligence against a moving vessel when she strikes a fixed or nonmoving object).

Stanships replies that the district court did not find the AMAZONIA to have violated any statutory rules so as to trigger the Pennsylvania Rule. Stanships also points out that "[o]bviously the BOUCHARD flotilla, racing across the Mississippi River, was neither an anchored or moored vessel" at the time of the collision.

Here, the district court found the BOUCHARD flotilla solely at fault for the collision. We conclude the court's finding that the AMAZONIA played no role in causing the collision is not clearly erroneous. Thus, the Pennsylvania Rule did not apply. The court found that the collision occurred while the BOUCHARD flotilla was rotating clockwise across the river and the AMAZONIA was maneuvering up the river. We conclude the court's determination that the collision happened while both vessels were moving is not clearly erroneous. Thus, the moving-vessel doctrine also did not apply.

## CONCLUSION

9

Having carefully reviewed the record and the parties' respective briefing and arguments, and for the reasons set forth above, we AFFIRM the final judgment of the district court.

**AFFIRMED.**