United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 5, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-30723

IN RE: In the Matter of the Complaint of DENET TOWING
SERVICES, INC., Individually and as owner of the Tug Lady
Melinda for Exoneration from or Limitation of Liability

-------------------------------------------

HALLIBURTON ENERGY SERVICES, doing business as Baroid
Drilling Fluids Inc. And Baroid Halliburton Company,

Plaintiff-Appellant

VERSUS

DENET TOWING SERVICES, INC., Individually and as owner of the
Tug Lady Melinda; NAVIGATORS INSURANCE COMPANY, through
Navigators Insurance Services of Texas, Inc.; WATER QUALITY
INSURANCE SYNDICATE, for itself and on behalf of all
subscribing insurance,

Defendants-Appellees

Appeal from the United States District Court
For the Eastern District of Louisiana
(2:03-CV-1582)

Before KING, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5th Cir. R.

This case arises from an accident on the Mississippi River Gulf Outlet ("MRGO") in New Orleans wherein a barge, owned by Halliburton and being towed by a Denet Towing tug boat, suddenly listed to port. The port bow of the barge submerged and seven of eight large cargo tanks mounted to the deck of the barge broke free and fell overboard.[1] The barge "sprang back on the boat," and Captain Denet, the captain of the tug, then maneuvered the barge to shore. Halliburton sued Denet Towing and various insurers for damages under general maritime tort, contract, and cargo damage law, and for cost of recovery and contribution under CERCLA.[2] Halliburton alleged that Captain Denet, through negligent operation of the tug, lost control of the barge and caused the tanks to break loose or, alternatively, that Captain Denet negligently took the unseaworthy barge under tow.[3] Denet Towing argues that Halliburton

47.5.4.

[1] The tanks contained a heavy metal called barite in its bulk dry form and were later recovered from thirty feet of water in the middle of the MRGO channel.

[2] Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended.

[3] Halliburton also alleged that Denet breached its towage contract by failing to deliver the barge to its original destination, Venice, Louisiana; and that Denet breached a warranty of workmanlike service by failing to supply a towing vessel and crew adequate to

2

tendered an unseaworthy vessel for tow, and that the unseaworthiness was caused by cracks and holes in the barge near the waterline that were not apparent when the Denet Towing crew conducted its visual inspection before leaving dock. The case was heard before a judge sitting without a jury in a bifurcated trial. The district court found for Denet Towing. Given the clear error standard of review, we see no reason to overturn the district court's factual determination. *See* FED. R. CIV. P. 52(a).

Captain Denet and his crew testified that they inspected the barge before departing from the Haliburton facility where it was loaded, noticing only a slight list to port bow. Captain Denet testified that at the time of the accident the tug and barge were in the middle of the MRGO and did not hit anything, but that the barge just suddenly listed to port and the tanks slid off the deck as the barge "sprang back" on the tug.

Two Halliburton experts and two Denet Towing experts all testified that the barge had cracks and wasted holes in the hull which predated the accident. Denet Towing's experts testified that the cracks would not have been apparent upon normal inspection. The Denet Towing experts, as well as both Halliburton experts, differed in opinion as to what caused the accident. One Halliburton expert noticed two recently incurred scrapes on the

---

performing the towage contract. It further argued several insurance-related issues not before the court on appeal.

bottom of the vessel and opined that the barge ran aground. Another Halliburton expert opined that the vessel hit debris as the barge drifted toward shallow water, but could not have run aground because it would have become stuck. The Denet experts opined that the cracks and wasted holes allowed water to flow into two of the barge's compartments, causing the barge to lose stability. Both Denet Towing experts testified about the shoreline of the MRGO in the vicinity of the accident, which is solid rock extending approximately thirty feet from the shoreline into the channel to a depth of nine feet. Thus, both testified, if the barge had run aground, the bottom of the barge would have sustained significant damage; one expert testified that the barge would have sunk on the spot. Both Denet Towing experts also agreed that given the post-accident location of the extremely heavy cargo tanks, the accident must have occurred in the middle of the MRGO channel.

The district court found the testimony of the Denet Towing experts more credible. The district court also found that the cause of the accident was the unseaworthiness of the barge before it left the dock and that Captain Denet was not negligent either in taking the vessel under tow, or in piloting the vessel down the MRGO in a manner that caused the accident. We find no clear error in these findings of fact.

In a towage contract, the towing vessel owes a duty to exercise such reasonable care and maritime skill that prudent

4

navigators employ in performing similar services. *Tidewater Marine Activities, Inc. v. Am. Towing Co.*, 437 F.2d 124, 130 (5th Cir. 1970). The *Pennsylvania* rule is "a presumption in admiralty law that a statutory violation by a party to a collision is a cause of the damage unless it is established that the violation could not have caused or contributed to the collision." *American River Transp. Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 449 (5th Cir. 1998)*(citing *The Steamship Pennsylvania v. Troop*, 86 U.S. 125 (1873)). Halliburton argues that the district court misapplied the *Pennsylvania* rule. We disagree.

At the time of the accident Captain Denet had been captain for eighteen and one-half (18 ½) hours in the relevant twenty-four (24) hour period, six (6) hours longer than allowed by regulation. 46 C.F.R. § 15.610. Denet also committed other regulatory violations, including failing to have a second licenced operator on board when a tug is operating more than twelve (12) hours in a twenty-four (24) hour period. 46 C.F.R. § 15.610(a).

The district court found that the statutory violations were unrelated to the cause of the accident, *viz.,* the unseaworthiness of the barge, and so the Pennsylvania burden shifting rule did not apply. "As we have explained, the Supreme Court in *The Pennsylvania* 'did not intend to establish a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the imagination have had any

5

causal relation to the collision, no matter how speculative, improbable or remote.'" *American River Transp*., 148 F.3d at 450 (quoting *Compania De Maderas De Caibarien, S.A. v. Queenston Heights*, 220 F.2d 120, 122-23 (5th Cir. 1955)).  We find no error in the trial court's view of the relationship between the *Pennsylvania* Rule and this case.

AFFIRMED.